IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GARDEN RIDGE CORPORATION, | ) | Case No. 04-10324 (KJC) |
| *et al.,* | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Re: Docket No. 2170 |

**REORGANIZED DEBTORS' MOTION FOR LEAVE TO APPEAL ORDER
DENYING MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO THE
MOTIONS OF THE INFORMAL LANDLORD COMMITTEE FOR ALLOWANCE
OF REASONABLE FEES AND ADMINISTRATIVE EXPENSES INCURRED
FOR PROFESSIONAL SERVICES RENDERED PURSUANT TO 11 U.S.C. § 503(b)**

The above-captioned reorganized debtors (collectively, prior to the Effective Date (as

defined below), the "Debtors," and after the Effective Date, the "Reorganized Debtors") hereby

move (the "Motion") for leave to appeal the order of the United States Bankruptcy Court for the

District of Delaware (the "Bankruptcy Court"), dated May 16, 2006 [Docket No. 2170] (the

"Order") and accompanying opinion [Docket No. 2169] (the "Opinion"), denying the

Reorganized Debtors' Motion for Summary Judgment With Respect to the Motions of the

Informal Landlord Committee for Allowance of Reasonable Fees and Administrative Expenses

Incurred for Professional Services Rendered Pursuant to 11 U.S.C. §503(b) [Docket No. 1908]

(the "Summary Judgment Motion"), pursuant to 28 U.S.C. §158 and Rule 8003(a) of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the United States District Court for

the District of Delaware.[1]  In support of this Motion, the Reorganized Debtors state as follows:

---

[1] As required by Bankruptcy Rule 8003(a)(4), a copy of the Order is attached hereto as <u>Exhibit A</u>, and the
Memorandum of Opinion and Order issued in conjunction with the Order is attached hereto as <u>Exhibit B</u>.

## I. Statement of Facts

### A. *General Background*

1. The Reorganized Debtors own and operate Garden Ridge, a leading home décor retailer with 35 stores in 13 states throughout the South, Midwest and Mid Atlantic regions. On February 2, 2004 and February 4, 2004 (collectively, the "Petition Date"), the Reorganized Debtors filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"). On March 29, 2005, the Debtors filed their *First Amended Joint Plan of Reorganization (Corrected) Under Chapter 11 of the Bankruptcy Code* (the "Plan"). On April 28, 2005, the Court entered an order confirming the Debtors' Plan. The effective date of the Plan was May 12, 2005 (the "Effective Date").

### B. *Background Regarding the ILC*

2. During the year between the Petition Date and the Effective Date, the Debtors and certain of the landlords for many of the Reorganized Debtors' facilities became embroiled in a number of disputes in the context of the Reorganized Debtors' bankruptcy cases. Six of the landlords formed an unofficial committee, the Informal Landlord Committee (the "ILC"), on or about April 7, 2004,[2] to represent the interests of landlords in the bankruptcy cases.

3. The ILC retained Thompson & Knight, LLP ("T&K") as its legal counsel, and retained Chiron Financial Group, Inc. ("Chiron," and together with T&K, the "ILC Professionals") as its financial advisors. The terms of the engagement letters for both ILC Professionals regarding their ability to be paid are identical:

---

[2] The aforementioned statements regarding the formation and composition of the ILC are taken from the *Verified Statement of Informal Landlord Committee Pursuant to Fed.R.Bankr.P. 2019* filed October 24, 2004 (the "ILC 2019 Statement"). The Reorganized Debtors have no independent information regarding the current status of the ILC, the members who currently constitute the ILC, or which (if any) members of the ILC support the motions currently before the Bankruptcy Court.

(i) in the event that the Committee acquires official status under Section 1102(a) of the Bankruptcy Code, then [the ILC Professional] may file a fee application with the Court seeking reimbursement of all reasonable fees and expenses pursuant to Section 330 of the Bankruptcy Code;[3]

(ii) in the event that the Committee fails to acquire official status under Section 1102(a) of the Bankruptcy Code, then [the ILC Professional] may file a motion for substantial contribution with the Bankruptcy Court for reimbursement of all fees and expenses that provided a substantial benefit to the estate, including the landlords represented by this Committee;

(iii) The Committee may decide from time to time, but is not required, to contribute to the payment of fees and expenses for the professional services performed by [the ILC Professional] in this case. Unless and until such a decision is made, [the ILC Professional] agrees to look solely to the estate for repayment of all fees and expenses.

Attorney Engagement Letter, at p. 2; Chiron Engagement Letter, at pp. 2-3.

      C.     *Background to the Summary Judgment Motion*

      4.     This proceeding was initiated by the filing of two motions: (i) the *Motion of the Informal Landlord Committee for Allowance of Reasonable Fees and Administrative Expenses Incurred for Professional Services Rendered Pursuant to 11 U.S.C. § 503(b)* (the "Attorney Motion") [*see* Docket No. 1514] ), which sought reimbursement of the fees and expenses of the ILC's legal counsel in the total amount of $425,739.41, and (ii) *Motion of the Informal Landlord Committee for Allowance of Reasonable Fees and Administrative Expenses Incurred for Professional Services Rendered Pursuant to 11 U.S.C. § 503(b)* (the "Chiron Motion," and together with the Attorney Motion, the "Reimbursement Motions") [*see* Docket No. 1516], which sought reimbursement of Chiron's fees and expenses in the total amount of $856,046.33.

      5.     The Reimbursement Motions were filed on April 14, 2005. On August 8, 2005, the Debtors, among others, filed objections to the Motions. On September 19, 2005, the

---

[3] The Bankruptcy Court rejected the ILC's attempt to acquire official status [Docket No. 1398]; therefore, this provision is moot.

Debtors filed the Summary Judgment Motion, based upon two separate issues of law: (i) that in order to recover fees and expenses under section 503(b)(4) of the Bankruptcy Code, the creditor party seeking reimbursement must have incurred actual expenses from the attorneys or accountants; and (ii) that only attorneys and accountants (and not financial advisors such as Chiron) can be reimbursed pursuant to section 503(b).

6.     The Bankruptcy Court[4] heard oral argument on the Summary Judgment Motion on November 16, 2005, and issued its ruling on the Summary Judgment Motion, in the form of the Order and accompanying Opinion, entered on May 22, 2006.

## II.     Questions Presented by Appeal and Relief Sought

7.     The Reorganized Debtors seek interlocutory review of the following questions raised by the Order:

(i)     Whether the Bankruptcy Court erred as a matter of law in holding that 11 U.S.C. § 503(b)(4) does not mandate that the ILC must have "incurred" any expense as a precondition to reimbursement of such expense by the Reorganized Debtors; and

(ii)    Whether the Bankruptcy Court erred as a matter of law in holding that, although by its terms, 11 U.S.C. § 503(b)(4) only applies to attorneys or accountants, the fees of non-attorneys and non-accountants (such as Chiron) can also be compensated under this provision.

8.     The relief sought by the Reorganized Debtors by this appeal is the entry of an order reversing the Bankruptcy Court's Order and granting summary judgment in favor of the Reorganized Debtors on the basis of issue (i) above, thereby holding that because the ILC did not incur the expenses presented in the Reimbursement Motions, the ILC Professionals are not entitled to reimbursement as a matter of law under 11 U.S.C. § 503(b)(4).

---

[4] At that time, visiting Judge Randolph Baxter was presiding over the bankruptcy cases.

9.      Alternatively,[5] the Reorganized Debtors seek entry of an order reversing the Bankruptcy Court's Order and granting summary judgment in favor of the Reorganized Debtors on the basis of issue (ii) above, thereby holding that because Chiron is not an attorney or accountant, Chiron is not entitled to reimbursement as a matter of law under 11 U.S.C. § 503(b)(4).

## III.    Reasons for Granting Leave to Appeal

10.     The Order, which is admittedly not a final dispositive order resolving the Reimbursement Motions, denied summary judgment on matters of law that, if decided in favor of the Reorganized Debtors, would have resolved the Reimbursement Motions in their entirety. Although not immediately evident from the Order and Opinion, the Bankruptcy Court adopted a minority viewpoint regarding whether a creditor of the debtor was required to have "incurred" an expense as a prerequisite to the recovery of fees and expenses of such creditor's professionals, and it did so without any analysis of the majority view. In addition, the Bankruptcy Court failed to address conflicting case law regarding whether non-attorneys or non-accountants are entitled to recover fees and expenses under section 503(b)(4). Finally, reversal of the Order would terminate the litigation of one or both Reimbursement Motions, thereby avoiding the dedication of significant time and resources (on the part of both the litigants and the Bankruptcy Court) in considering the intensive factual inquiry presented by the Reimbursement Motions.

### A.    Standard for Proceeding with an Interlocutory Appeal

11.     Pursuant to 28 U.S.C. § 158(a)(3), appeals of interlocutory orders and decrees of the bankruptcy court may only be taken with leave of the district court. In applying section 158(a)(3), district courts may be guided by the criteria governing appeals of interlocutory

---

[5] If the first question raised by this appeal is decided in favor of the Reorganized Debtors, the Court would not need to reach the second question.

orders of district courts to the courts of appeal as set forth in 28 U.S.C. § 1292(b). See In re

Marvel Entertainment Group, Inc., 209 B.R. 832, 837 (D. Del. 1997) (holding that, as the

Bankruptcy Code and the Federal Rules of Bankruptcy Procedure do not articulate a specific

standard for consideration of appeals from interlocutory bankruptcy court orders pursuant to

section 158(a)(3), district courts may look to section 1292(b) for guidance); Dal-Tile Int'l., Inc.

v. Color Tile, Inc., 203 B.R. 554 (D. Del. 1996) (applying section 1292(b) criteria to determine

whether or not immediate appeal of bankruptcy court interlocutory appeal is warranted).

   12. Under section 1292(b), in order for appeals of most interlocutory orders to

courts of appeal to proceed, the district court must certify that: (1) the order involves a

controlling question of law; (2) there is a substantial ground for difference of opinion regarding

such controlling question of law; and (3) an immediate appeal of the order would materially

advance the ultimate termination of the litigation. See 28 U.S.C. § 1292(b); Katz v. Carte

Blanche Corp., 496 F.2d 747, 754 (3d Cir. 1974) (en banc) (noting that pursuant to section

1292(b) "the district judge must certify that the order satisfies the three criteria" set forth in such

section). See also Marvel, 209 B.R. at 837 (applying section 1292(b) standards to assess

propriety of hearing appeal of interlocutory bankruptcy court order). The district court's

certification pursuant to section 1292(b) must satisfy all three of the section 1292(b) criteria. See

Katz, 496 F.2d at 754. In considering the appeal of the Order, the Reorganized Debtors submit

that each of the criteria has indeed been met.

  B. "Controlling questions of law" raised by the Order.

   13. A "controlling question of law" is one that, if erroneously decided, would

result in reversible error on final appeal. See Marvel, 209 B.R. at 837. Further, a "question of

law" for purposes of section 1292(b) "has reference to a question of the meaning of a statutory or

constitutional provision, regulation, or common law doctrine . . . ." See Ahrenholz v. Board of Trustees of the Univ. of Ill. 219 F.3d 674, 676 (7th Cir. 2000).

14.     The Reorganized Debtors filed the Summary Judgment Motion because, based upon their analysis of the applicable statutes and case law construing such provisions for an unofficial committee to potentially recover and receive "reimbursement" of expenses from a bankruptcy estate under section 503(b)(3) of the Bankruptcy Code, the expenses must actually be "incurred" by the unofficial committee. Further, based on a reading of the plain language of section 503(b)(4) and cases construing that provision, reasonable compensation for professional services is only available to an attorney or accountant of a creditor, and not a financial advisor of the creditor.

15.     The Reorganized Debtors submit that the Bankruptcy Court committed reversible error by failing to address and follow the case law cited by the Reorganized Debtors. The Bankruptcy Court's interpretation of sections 503(b)(3) and (b)(4), if deemed improper on appeal, would serve as reversible error.

C.     "Substantial ground for difference of opinion" as to controlling questions of law.

16.     The "substantial ground for difference of opinion" criterion is inextricably linked with the "controlling question of law" criterion. See KPMG Peat Marwick, L.L.P. v. Estate of Nelco, 250 B.R. 74, 79 (E.D. Va. 2000) ("the second element is related to and dependent upon the first element -- the denial must involve a controlling question of law, and there must be substantial ground for a difference of opinion as to that controlling question of law, not generally as to the denial itself").

17.     In essence, to meet the "substantial ground for difference of opinion" criterion, the putative appellant must show either a split of authority among judicial precedents

or that the lower court's decision is clearly reversible.  See Carducci v. Aetna U.S. Healthcare,

2002 U.S. Dist. LEXIS 19748, *8 (D. N.J. July 24, 2002) (holding that a party seeking

interlocutory review must "point to precedents indicating a split of authority on this issue which

might suggest a substantial ground for difference of opinion justifying interlocutory review in an

extraordinary case"); Oyster v. Johns-Manville Corp., 568 F Supp. 83, 86 (E.D. Pa. 1983)

(holding that whether substantial ground for a difference of opinion exists "may be demonstrated

by adducing 'conflicting and contradictory opinions' of courts which have ruled on the issue.").

In this regard, one court has noted as follows:

> Opposing parties will usually have divergent opinions on any
> given decision by a court, but the courts themselves may or may
> not disagree as to the law underlying that decision. In the interest
> of judicial economy, it is appropriate that district courts not deem
> the second element satisfied whenever parties disagree as to a
> Bankruptcy Court's interlocutory order, but rather only where a
> substantial ground for disagreement exists as to controlling issues
> of law that informed the order. Doing so restricts interlocutory
> appeals to those cases in which the parties earnestly dispute the
> law, not simply the result.

KPMG, 250 B.R. at 79.

18.     As stated above, the Reorganized Debtors believe that the Bankruptcy

Court did not make any attempt to analyze or consider the conflict between courts construing the

language of sections 503(b)(3) and 503(b)(4).  Although not addressed in the Order or Opinion,

it is this conflict between the opinions of courts construing the statutes that makes an

interlocutory appeal appropriate here.  See KPMG, 250 B.R. at 83 ("[F]or an interlocutory appeal

to lie, it matters not whether the lower court simply got the law wrong (at least in the opinion of

the appealing party); such a mistake could presumably be corrected on appeal after the lower

court issues its final ruling.  What matters is whether courts themselves disagree as to what the

law is."); Hulmes v. Honda Motor Co., 936 F. Supp. 195, 208 (D.N.J. 1996) ("A party's

disagreement with the district court's ruling does not constitute a 'substantial ground for difference of opinion'. . . . Rather, the difference of opinion must arise out of genuine doubt as to the correct legal standard.").

### 1.    Whether the ILC Professionals' expense must have been "incurred" by the ILC

19.    First, in considering whether an unofficial committee is required to have "incurred" an expense of professional services in order for such expense to be reimbursed by the estate under section 503(b)(4), the Bankruptcy Court's entire analysis is found in one sentence, holding that "[s]ection 503(b)(4) does not require the ILC to have 'incurred' T&K's and Chiron's professional fees and expenses to recover such fees and expenses as an administrative claim. *In re Western Asbestos Co.*, 318 B.R. 527, 531 (Bankr. N.D. Cal. 2004)...." Opinion, at p. 12.

20.    Although this is an accurate summary of the holding of the <u>Western Asbestos</u> court, the Bankruptcy Court appears to accept this statement of the law as beyond dispute. However, the Bankruptcy Court did so in the face of two subsequent cases that both explicitly criticized the <u>Western Asbestos</u> ruling as an invalid statement of the law.

21.    In <u>Olsen v. Robinson Brog Leinwand Greene Genovese & Gluck P.C. (In re Olsen)</u>, 334 B.R. 104 (Bankr. S.D.N.Y. 2005),[6] the district court in the Southern District of New York vacated an order of the bankruptcy court below, and expressly rejected the holding of the <u>Western Asbestos</u> case. In that case, the debtor sold certain real property through a court-ordered auction. The proceeds of the sale were held in escrow by the creditor husband's attorneys, Robinson Brog. When Robinson Brog filed an application for payment from the

---

[6] This case was decided and published within the week prior to the parties' oral argument on the Summary Judgment Motion, and for this reason was not included in the Reorganized Debtors' moving papers. However, the Reorganized Debtors did present this case in its oral argument to the Bankruptcy Court.

debtor's estate under §503(b)(4), the creditor husband objected to the application. The

bankruptcy court awarded Robinson Brog fees out of the proceeds of the debtor's sale. On

appeal, the district court reversed, holding that section 503(b)(4) did not create an independent

right of an attorney or accountant to be reimbursed from the debtor's estate assets; rather, any

award of fees for attorneys or accountants could only arise where they represented obligations of

the creditor entitled to compensation under section 503(b)(3). The Olsen court held that:

> only a creditor, or an attorney acting on behalf of a creditor, may apply for and
> receive attorneys' fees under section 503. Where the creditor has incurred no
> obligation to pay his attorney, that attorney cannot be said to be seeking fees from
> the estate "on the creditor's behalf." Second, section 503(b)(3) expressly states
> that it covers "the actual, necessary expenses, other than *compensation and
> reimbursement specified in paragraph (4) of this subsection, incurred by,"* §
> 503(b)(3) (emphasis added), *"a creditor* ... in making a substantial contribution in
> a case under chapter 9 or 11 of this title," § 503(b)(3)(D) (emphasis added). In
> this Court's view, the statute contemplates that the fees covered by subsection
> (b)(4), like those costs covered by subsection (b)(3), will have been "incurred by"
> a creditor.

Olsen, 334 B.R. at 107 (emphasis added). In making its ruling, the Olsen court considered, and

rejected the holding of Western Asbestos as a correct statement of the law. Id. (holding that "an

implication of Western Asbestos's holding is that, at least under certain circumstances, an

attorney is entitled to payment under section 503 *in his own right.* The Court rejects this

analysis").

   22.  The United States Bankruptcy Court for the Southern District of New

York also expressly rejected the Western Asbestos holding in In re WorldCom, Inc., Ch. 11 Case

No. 02-B-13533 (AJG), Docket No. 16380 (Bankr. S.D.N.Y. July 8, 2005).[7] Based, in part, on

what it described as a "natural reading of the statute," the court concluded that

> a representative of an entity does not have standing, as a section 503(a)
> entity, to seek allowance of its fees under section 503 and the underlying
> policy considerations of section 503(b) do not support or compel any

---

[7] The WorldCom order is attached hereto as Exhibit C for the Court's convenience.

> expansion of that section to permit a representative of an entity to seek
> compensation on its own behalf…It must be stated that <u>a client's
> obligation to pay the fees of a professional provides an important control
> and oversight regarding the efforts of an attorney</u>.

<u>Id.</u> at 8-9 (emphasis added). Again, in making its decision, the <u>WorldCom</u> court considered and

rejected the holding in <u>Western Asbestos</u>. <u>WorldCom</u>, at p. 6 ("This Court respectfully disagrees

with the court in *Western Asbestos*.")

      23.    Moreover, the <u>Western Asbestos</u> court itself admitted that its ruling was at

odds with the interpretation of the statute in one of the seminal treatises on bankruptcy law,

Collier on Bankruptcy, which states that "[s]ection 503(b)(4) provides administrative expense

status for the cost of certain professional services incurred by an entity whose expenses are

allowable under section 503(b)(3).…" 4 Collier on Bankruptcy § 503.11 (15th ed. rev. 2003).

Further, the <u>Western Asbestos</u> court recognized that two other courts had construed the provision

in a manner consistent with the Collier interpretation. <u>See</u> <u>In re Glickman, et al.</u>, 196 B.R. 291,

295 n. 3 (Bankr. E.D. Pa. 1996) ("The Court is also concerned that [the law firm], not its

client…has chosen to file the request.… [O]nly creditors…may apply for reimbursement of

expenses…" under section 503(b)(3)), and <u>In re Oxford Homes, Inc.</u>, 204 B.R. 264, 267-68

(Bankr. D. Me. 1997).

      24.    Finally, the <u>Western Asbestos</u> court recognized that its interpretation of

section 503(b)(4) clashed with the interpretation presented in <u>In re Sedona Institute</u>, 220 B.R. 74

(9th Cir. BAP 1998). <u>Western Asbestos</u>, 318 B.R. at 530. In <u>Sedona</u>, the Ninth Circuit

Bankruptcy Appellate Panel, addressed the issue of whether a creditor can qualify for a

substantial contribution claim under section 503(b)(3) when its only expense is for professional

fees incurred under section 503(b)(4). The appellate panel remanded the case to the bankruptcy

court for a determination as to whether the creditors had, in the first instance, "incurred" the expense of the professionals. See id. at 81. In this regard, the panel stated:

> On remand the Bankruptcy Court should also consider whether Appellant's fees are an expense "incurred by" the [ ] creditors in the first place...Appellant appeared to suggest that his work was done on a contingency basis, that contingency being whether the court allowed the expense under § 503(b). This would appear not to be an obligation and expense of the [ ] creditors...The concern is a sound one. A primary objective of § 503(b)(3)(D) is to encourage creditor participation... The policy is achieved by offering to reimburse those creditors who make substantial contributions. If the creditor is not liable for the fees in the first place, then the purpose of the statute is not served by the estate assuming the obligation.

Id. (emphasis added).

      25.    On remand, the bankruptcy court denied the creditors' substantial contribution claim "on two independent grounds: (1)...[the attorney's efforts did not result in a] substantial contribution to the bankruptcy proceedings; and (2) [the attorney's] fees had not been "incurred by" the [creditors], who had no obligation to pay [the attorney] absent allowance of his fees as an administrative expense under § 503(b)." In re Sedona Institute, 21 Fed. Appx. 723, 724 (9th Cir. 2001).[8] The United States District Court for the District of Arizona affirmed on both grounds. See id. The Ninth Circuit Court of Appeals affirmed as to the first ground, and, as a result, did not address the second. Id.

      26.    The Reorganized Debtors submit that the Bankruptcy Court's Order and Opinion relied upon only one case that reflects (to be generous) a minority opinion regarding the issue of whether expenses of professionals must have been incurred by the committee in order to be reimbursed by the bankruptcy estate. As the differing interpretations of the law espoused by the Western Asbestos court on one hand, and the Olsen and WorldCom courts on the other, will

---

[8] Unpublished table opinion, a copy of which is annexed hereto as Exhibit D.

necessarily be an issue that will need to be resolved on appeal, an interlocutory appeal to resolve this dispositive legal issue now is appropriate.

**2.    Whether non-attorney, non-accountant expenses of Chiron are recoverable under section 503(b)(4)**

27.    The second question presented by the Reorganized Debtors for interlocutory appeal – whether professionals other than attorneys and accountants are entitled to recovery from the bankruptcy estate under section 503(b)(4) of the Bankruptcy Code – is also a question of law upon which various courts present divergent opinions.

28.    In <u>In re Granite Partners, L.P.</u>, an entity sought reimbursement of expenses under section 503(b)(4) for services provided to it by a financial advisor.  <u>See</u> <u>In re Granite Partners, L.P.</u>, 213 B.R. 440, 454 (Bankr. S.D.N.Y. 1997).  The Court denied the request opining that "[b]y its terms,…section 503(b)(4) applies only to attorneys and accountants. <u>Financial advisors…cannot be compensated on a substantial contribution basis</u>." <u>Id.</u> (citations omitted, emphasis added).  Permitting compensation for a financial advisor, the Court held, would "circumvent the plain limitation on section 503(b)(4)." <u>Id.</u>  Similarly, in <u>In re Columbia Gas System, Inc.</u>, 224 B.R. 540, 550 (Bankr. D. Del. 1998), although the creditor's substantial contribution request was denied on several grounds, the court noted that certain of the expenses for which the creditor sought reimbursement were simply not compensable under the section 503(b).  In this regard, the <u>Columbia Gas</u> Court noted that "[s]ome of these services or expenses are for professionals other than 'an attorney or an accountant,' 11 U.S.C. § 503(b)(4), and thus are not reimbursable".  <u>Id.</u>, citing <u>In re Granite Partners, L.P.</u>, 213 B.R. at 454.

29.    In <u>In re Baldwin United Corporation</u>, the indenture trustee for certain of the debtor's securities sought a substantial contribution claim including payment of expenses related to services provided to it by a financial advisor.  <u>See</u> <u>In re Baldwin United Corporation</u>,

79 B.R. 321, 341 (Bankr. S.D. Ohio 1987). The bankruptcy court denied the request on various unrelated bases. See id. However, with respect to the services of the financial advisor, the Baldwin Court stated that "[e]ven if [independent grounds to deny it did not exist], the language of § 503(b)(4) (unlike § 330(a)(1)), limits compensation to attorneys and accountants only, rather than any professional. Accordingly, reimbursement for [a financial advisor] must be disallowed." Id.

30.     Finally, although the Court in In re Keene Corporation, 208 B.R. 112 (Bankr. S.D.N.Y. 1997), addressed a request for payment of administrative expense under section 503(b)(1)(A), rather than a substantial contribution request, the Court nonetheless noted in dicta that "[u]nder section 503(b)(4), it would appear that an entity making a substantial contribution in a case could not recover for its financial advisor fees since this section limits recovery for professional services to attorneys and accountants." Id. at 116 n.8.

31.     The Reorganized Debtors are aware that the Delaware District Court allowed compensation to a non-attorney, non-accountant professional under Bankruptcy Code section 503(b)(4) in two instances. In In re AM International, 203 B.R. 898 (D. Del. 1996), the Court allowed compensation to a non-attorney, non-accountant professional under section 503(b)(4), but failed to provide any analysis to support this interpretation. The Bankruptcy Court in AM International denied the financial advisor's substantial contribution application "on the separate ground that he failed to fulfil [sic] the definition of accountant or attorney, as required by the statute." Id. at 902. The District Court on appeal, however, reversed on separate grounds and did not address this ruling. See In re Granite Partners, L.P., 213 B.R. at 454 (distinguishing AM International because the court ruled without discussing the scope of section 503(b)(4)).

32.     In ruling on the Summary Judgment Motion here, the Bankruptcy Court failed to analyze or even mention Granite Partners; nor did it address the lack of discussion of the scope of section 503(b)(4) in AM International that the Granite Partners court identified. Rather, the Bankruptcy Court simply ruled, without undertaking any independent analysis of the statute,[9] that financial advisors are entitled to compensation under section 503(b)(4) because such compensation was approved in AM International.

33.     The second ruling of the Delaware District Court allowing compensation to a financial advisor under section 503 was issued after briefing and oral argument on the Summary Judgment Motion.  Stapleton v. Unofficial Committee of Noteholders (In re ITC-Deltacom, Inc.), C.A. No. 03-111, 2006 U.S. Dist. LEXIS 13819 (D. Del. March 29, 2006).  The Reorganized Debtors submit that the issues surrounding that case and the present case are slightly different and mandate a different ruling, because the only conceivable avenue by which Chiron could be reimbursed by the bankruptcy estate is under section 503(b)(4) of the Bankruptcy Code.

34.     In ITC-Deltacom, the District Court found that "although subsection (b)(4) clearly imposes a limitation on recovery 'for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under [subsection (b)(3)(D)],' nowhere does it purport to limit other recoverable expenses.  Therefore, the court holds that the plain meaning

---

[9] The Bankruptcy Court did cite three cases that purportedly "allow[] §503(b)(4) claims by non-attorneys and non-accountants."  Opinion, at 11 (citing Goldin v. Putnam Lovell, Inc. (In re Monarch Capital Corp.), 163 B.R. 899 (Bankr. D. Mass. 1994), In re Bartley Lindsay Co., 120 B.R. 507 (Bankr. D. Minn. 1990), and In re Farmland Inds., Inc., 286 B.R. 895 (Bankr. W.D. Mo. 2002) as also supportive of its ruling).  However, **none** of these cases addressed the issue of section 503(b)(4) claims.  The Monarch case involved a broker who was a prepetition creditor of the debtor and had an executory contract with the debtor, and was awarded fees as a creditor pursuant to Section **503(b)(3)**.  In the Bartley case, fees were awarded to a consultant who entered into a consulting agreement with the debtor postpetition under section **503(b)(1)(A)**.  Finally, in the Farmland case, the fees awarded to a financial advisor to bondholders were so awarded under section **330**, as a professional person employed under section **327**.

of § 503 allows for recovery of the expenses of financial advisors." Thus, the thrust of the ITC-Deltacom ruling is that a creditor is not foreclosed from seeking recovery of fees and expenses paid to a financial advisor under Bankruptcy Code section 503(b)**(3)**, simply because Bankruptcy Code section 503(b)**(4)** speaks only to attorneys and accountants.

35.    However, in this case, Chiron's expenses cannot be reimbursed pursuant to Bankruptcy Code section 503(b)(3), because it is beyond peradventure that expenses reimbursed by the bankruptcy estate under that subsection must have been "incurred" by the creditor or committee. It is presumably for this reason that the Chiron Motion was presented to the Bankruptcy Court for approval under Bankruptcy Code section 503(b)(4), since the ILC did not "incur" an obligation to pay Chiron.

36.    The Reorganized Debtors submit, as stated above, that the expenses must be incurred by the creditor or committee under either provision; section 503(b)(4) simply includes a further analysis for reasonableness to be employed by the court in considering the fees and expenses of professionals. In any case, even if the Court were to disagree with the Reorganized Debtors' contention that the ILC was required to incur an expense in order for the Reimbursement Motions to be approved under section 503(b)(4), Chiron cannot recover fees under section 503(b)(3) because the ILC did not incur the expense, and cannot recover fees under section 503(b)(4) because Chiron is not "an attorney or an accountant."[10]

37.    The Reorganized Debtors do not believe that their analysis of the statute is inconsistent with the District Court's ruling in ITC-Deltacom. However, the Bankruptcy Court's ruling is certainly inconsistent with the plain language of Bankruptcy Code section 503(b)(4), the interpretation of the Granite Partners court and those courts following Granite Partners. As such,

---

[10] As stated above, if this appeal is granted and the Bankruptcy Court is reversed on the issue of whether Bankruptcy Code section 503(b)(4) requires that the expenses of the ILC Professionals must have been "incurred" by the ILC, an analysis of this question is unnecessary.

there is a substantial ground for difference of opinion on the correct interpretation of the law that an interlocutory appeal could resolve.

> D.    *An immediate appeal of the Order will materially advance the ultimate termination of litigation.*

38.    Under the third of the section 1292(b) criteria, immediate appellate review of an interlocutory order must "materially advance the ultimate termination of the litigation."

39.    To satisfy this prong of the statute, the movant is obligated to demonstrate that hearing the interlocutory appeal will serve to direct the conduct of the litigation more efficiently. See Northeast Sav. v. Geremia (In re Kalian), 191 B.R. 275, 278 (D.R.I. 1996) (holding that "the granting of § 1292(b) relief should be limited to 'rare cases where the savings of costs to the litigants and increase in judicial efficiency is great'"), citing Cummins v. EG & G Sealol, Inc., 697 F. Supp. 64, 68 (D.R.I. 1988). See also In re Magic Marker Sec. Litig., 472 F. Supp. 436, 438-39 (E.D. Pa. 1979) ("The party seeking certification need not demonstrate that the litigation will certainly be expedited by an interlocutory appeal [but] should come forward with something more than mere conjecture in support of his claim that certification may save the court and the parties substantial time and expense").

40.    Considering the appeal at this point will serve to expedite the litigation between the Reorganized Debtors, the ILC, and the numerous other parties who have been active in this dispute. If the appeal is heard, the Order is reversed, and summary judgment is granted in favor of the Reorganized Debtors with respect to issue (i), holding that the ILC was required to have "incurred" an expense prior to seeking recovery from the bankruptcy estate under Bankruptcy Code section 503(b)(4) on account of the Professional Applications, the litigation in the Bankruptcy Court would be resolved in its entirety.

41.     If the Order is reversed and summary judgment is granted in favor of the Reorganized Debtors with respect to issue (ii) but not issue (i), holding that Bankruptcy Code section 503(b)(4) does not require that the ILC "incur" an expense in order for the professionals to be compensated, but that Chiron does not qualify as a professional entitled to be compensated based upon the plain language of that provision, the litigation of the Chiron Motion would be resolved in its entirety.[11]

42.     Under either scenario, a resolution of the appeal at this time would represent substantial savings of litigation costs to the Reorganized Debtors, the ILC, and several other parties from whom discovery has been sought, and would also promote judicial efficiency by eliminating the need for the Bankruptcy Court to engage in an in-depth, fact-specific inquiry into both of the Reimbursement Motions.  After the Reimbursement Motions were filed, and the Reorganized Debtors (along with other parties in interest) filed objections, the ILC issued discovery demands to the Reorganized Debtors, the official committee of unsecured creditors, the Reorganized Debtors' senior secured lender, the Reorganized Debtors' junior secured lender and the Reorganized Debtors' plan equity sponsor, GRDG Holdings, LLC, requesting documents from each of them relating to fifteen different areas of inquiry.  Depositions of each of those parties is expected in turn.

43.     The Reorganized Debtors also issued discovery requests to the members of the ILC, T&K, and Chiron.  Once documents are produced, depositions will be scheduled.[12] If the Reorganized Debtors' appeal is not heard now, the discovery process will go forward,

---

[11] Of the $1,281,785.74 sought in the Reimbursement Motions, the Chiron fees account for $856,046.33 of this total.

[12] The discovery process was stayed, by agreement of the parties, pending resolution of the Summary Judgment Motion.  Implicit in this agreement to stay discovery was an understanding that if the Summary Judgment Motion were granted, some or all of the pending discovery would be rendered moot.

requiring the dedication of significant time and expense by all parties in interest, and potentially

requiring the dedication of judicial resources in the event of any discovery dispute.

44.     Further, as noted above, if the Order is permitted to stand, the ILC

Professionals will be required to present their fact-based case that the fees and expenses sought

in the Reimbursement Motions (i) meet the standard for "reasonable" compensation for

professional services rendered, and (ii) represent "efforts of the applicant [that] resulted in actual

and demonstrable benefit to the debtor's estate and the creditors." Lebron v. Mechem Financial

Inc., 27 F.3d 937, 944 (3d Cir. 1994).  Both of these factual requirements will require significant

analysis on the part of the Bankruptcy Court.[13]

45.     The Attorney Motion includes over 200 separate time entries, and the

Chiron Motion includes well over 1,000 separate time entries.  In analyzing the reasonableness

of the Reimbursement Motions, the Bankruptcy Court will be required to engage in a review of

the reasonableness of the compensation requested based upon each individual time entry

included in the Reimbursement Motions, and consider the services provided as evidenced by

each time entry under the section 330 standards.

46.     Additionally, the ILC must demonstrate that the ILC Professionals'

participation in the Reorganized Debtors' bankruptcy cases were not undertaken primarily to

---

[13] The reasonableness of the fees sought under section 503(b) are analyzed under the same standards applied under section 330 of the Bankruptcy Code.  See In re On Tour, LLC, 276 B.R. 407, 418-19 (Bankr. D. Md. 2002) ("The requirements under 11 U.S.C. § 330 for documenting how time was expended are applicable to fee applications filed under 11 U.S.C. § 503(b). This court has an obligation to review the entire pleading with the [section 330] criteria in mind.").

Section 330 of the Bankruptcy Code enumerates five (5) factors to be considered when determining the amount of reasonable compensation to be awarded to an estate professional. See 11 U.S.C. § 330. "Under section 330(a), the court may award 'reasonable compensation for actual, necessary services rendered by...professionals 'based on (i) nature of the services, (ii) extent of the services, (iii) value of the services, (iv) time spent on the services, and (v) the cost of comparable services in non-bankruptcy cases." In re Channel Master Holdings, Inc., 309 B.R. 855, 861 (Bankr. D. Del. 2004) (citations omitted).

protect the ILC's own interests, and that if the ILC Professionals' efforts had not been

undertaken, progress towards reorganization would have been substantially diminished. In re

Columbia Gas Systems, Inc., 224 B.R. at 552. Indeed, because creditors are presumed to have

acted in their own self-interest, compensation under section 503(b) requires a showing that their

efforts went beyond the protection of their individual interests. See Lebron, 27 F.3d at 944; In re

Columbia Gas Systems, Inc., 224 B.R. at 547. In this respect, the Bankruptcy Court will also be

required to review all of the separate time entries to determine whether the activity undertaken

by the ILC Professional in question was self-interested or whether it provided a contribution to

the reorganization process.

        47.    The remaining factual disputes not addressed by this appeal could occupy

an inordinate amount of time, as the ILC Professionals must establish both reasonableness and

substantial benefit to the reorganization of the Reorganized Debtors for each time entry.

However, if the Order is reversed on appeal, and judgment is granted in favor of the Reorganized

Debtors on the threshold questions of law presented herein, there will be no need to determine

these issues before the Bankruptcy Court. Alternatively, if the Order is reversed in part, and

summary judgment is granted in favor of the Reorganized Debtors solely on the issue of whether

Chiron, as a financial advisor, is entitled to recover from the bankruptcy estate under Bankruptcy

Code section 503(b)(4), this ruling will eliminate the need to examine the more than 1,000

Chiron time entries for reasonableness and benefit to the reorganization. In any event, it is clear

that if the appeal is heard now, such appeal could result in a significant cost and time savings to

the litigants and to the Bankruptcy Court.

## IV. Conclusion

WHEREFORE, for all the foregoing reasons, the Reorganized Debtors respectfully request that this Court enter an order (i) granting the Motion, (ii) granting the Reorganized Debtors leave to appeal the Order, and (iii) granting such other and further relief as is just and proper under the circumstances.

Dated: June 1, 2006
Wilmington, Delaware

YOUNG CONAWAY STARGATT &TAYLOR, LLP

Pauline K. Morgan (No. 3650)
Joseph M. Barry (No. 4221)
Sean T. Greecher (No. 4484)
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

– and –

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Alan W. Kornberg
Curtis J. Weidler
Justin G. Brass
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

Counsel for the Reorganized Debtors

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                                IN PROCEEDINGS UNDER CHAPTER 11

GARDEN RIDGE, INC. et al.            CASE NO. 04-10324

                                     JUDGE RANDOLPH BAXTER

            Debtor.

## JUDGMENT

At Cleveland, in said District, on this 16th day of May, 2006.

A Memorandum Of Opinion And Order having been rendered by the Court in this matter,

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that there exists a genuine issue of material fact as to whether the ILC and its professionals, Chiron and T&K, substantially contributed to the Debtors' estate for purposes of § 503(b). Accordingly, the cross motions for summary judgment are hereby denied. A hearing on this matter relative to the substantial contribution claim will be scheduled to allow for the presentation of evidence by the parties. Each party is to bear its respective costs.

IT IS SO ORDERED.

                            JUDGE RANDOLPH BAXTER
                            UNITED STATES BANKRUPTCY COURT

# EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                                          IN PROCEEDINGS UNDER CHAPTER 11

GARDEN RIDGE, INC. et al.                       CASE NO. 04-10324

                                                JUDGE RANDOLPH BAXTER

            Debtor.

## MEMORANDUM OF OPINION AND ORDER

The matter before the Court is Garden Ridge Corporation, *et al*'s (hereinafter "the

Debtors") motion for summary judgment pursuant to Bankruptcy Rule 7056.  Summary judgment

is sought in response to a motion filed by the Informal Landlord Committee's ("ILC") seeking

allowance of reasonable fees and administrative expenses incurred for professional services

rendered pursuant to 11 U.S.C. § 503(b).  The Court has jurisdiction to determine the motion

under 28 U.S.C. § 1334.

The ILC's motion requests payment of professional fees and expenses incurred by Chiron

Financial, its financial advisor, in the total amount of $856,046.33, as administrative expenses.

The ILC alleges that Chiron provided services that made a substantial contribution to the estate.

Chiron seeks compensation under § 503(b)(4) of the Code.  The ILC's motion also requests

payment of professional fees and expenses incurred by Thompson & Knight LLP ("T&K"), the

ILC's primary counsel, in the total amount of $425,739.41, as administrative expenses pursuant

to 11 U.S.C. § 503(b).

The Debtors argue that, due to the contingent nature of the fee arrangement for T&K and

Chiron, the ILC lacks standing under § 503(b)(4).  The Debtors also argue that the ILC cannot

recover Chiron's professional fees and expenses under § 503(b)(4) because Chiron is not an

attorney or accountant.

The United States Trustee, the Official Committee of Unsecured Creditors, Garden Ridge Holdings, and Applied Capital filed pleadings in support of the Debtors' motion for summary judgment. After a duly-noticed hearing, the Court makes the following findings and conclusions:

On February 2, 2004, Debtors filed for Chapter 11 relief. The United States Trustee appointed an official committee of unsecured creditors (the Creditors Committee). On April 14, 2005, the Informal Landlord Committee (the ILC) filed motions for the allowance of reasonable fees and administrative expenses incurred for professional services rendered pursuant to 11 U.S.C. § 503(b). The motion requested fees for (1) the services of Thompson & Knight LLP (T&K) as the ILC's primary counsel, (2) Robinson, Grayson & Drayden, P.A. ("RG&D") as the ILC's local counsel[1], and (3) Chiron Financial Group ("Chiron") as the ILC's financial advisor. On March 4, 2005, this Court denied the motion of the Informal Landlord Committee to appoint an official committee of landlords. The ILC alleges that it was formed on April 7, 2005 by a group of landlords that were a party to eight leases with the Debtors. According to the ILC's motion, on the same date the ILC was formed, it retained Chiron as its financial advisor. The Debtors' Plan of Reorganization was confirmed by this Court on April 28, 2005.

The Debtors assert that it is undisputed that the ILC did not incur any obligation to pay either Chiron or T&K because the ILC is not required to contribute or make any payments to such professionals. To support this assertion, the Debtors cite to the engagement letters of the professionals, and further assert that the subject professionals entered into a contingency fee

---

[1] A certification of counsel appears on the docket reflecting a stipulation between the Debtors and RG&D. So, RG&D's requested fees will not be discussed herein.

2

arrangement whereby the professionals agreed to look only to the Debtors for compensation if successful in a substantial contribution motion. Indeed, the ILC has never made a payment to these professionals. The Debtors further contend that, in order to recover fees and expenses under §503(b)(4), the creditor party seeking reimbursement must have incurred actual expenses from the attorneys or accountants. The Debtors argue that it is undisputed that Chiron Financial acted as a financial advisor to the ILC and only attorneys and accountants can be reimbursed pursuant to the plain language of §503(b) of the Bankruptcy Code.

The ILC filed a cross motion for partial summary judgment requesting the Court find that it or T&K and Chiron have standing to seek professional fees and administrative expenses. The ILC asserts that it retained Chiron as its financial advisor in the case on April 7, 2004. According to the ILC, the services which the ILC authorized Chiron to render, and services which have been rendered include:

- Review and analyze the financial and operating statement of the Company and each retail outlet;
- Evaluate the assets and liabilities of the Company;
- Review and analyze the business of the Company and financial projections;
- Evaluate the Company's debt capacity in light of its projected cash flows;
- assist in the determination of an appropriate capital structure;
- Determine a theoretical range of values for the Company on a going concern basis;...

The ILC contends that, Chiron's services were: designed to benefit all parties to the Debtor's estate, resulted in actual and demonstrable benefits to the Debtors' estate and its creditors, directly and materially contributed to the benefits to the Debtors' reorganization, "transcended self-protection of the interests of the Landlord Committee", and would not have been undertaken absent expectation of reimbursement from Debtors' estate, and were not duplicative of services provided by others in the case.

3

The ILC argues that Chiron agreed to be compensated for its fees and expenses out of any administrative expense claim awarded as a result of this motion in the event that a motion to secure official status for the Landlord Committee was unsuccessful. The ILC disputes the Debtors argument that Chiron's alleged substantial claim does not require the professional be labeled an "attorney" or "accountant". It asserts that Chiron's services as financial advisor fits within the types of services that are rendered by an "accountant". The ILC cites to a district court opinion reversing a bankruptcy court decision which denied a § 503(b)(4) claim on the sole basis that a financial advisor was not an accountant. The ILC also asserts that under § 101(1), a financial advisor is considered an accountant for §503(b)(4) purposes.

The UST supports the motion for summary judgment filed by the Debtors. The UST argues that Chiron is not eligible for compensation under § 503(b)(4) because it is neither an attorney or accountant as the plain meaning of the statute requires. The UST also argues that financial advisors cannot be compensated on a substantial contribution basis under § 503(b). Next, the UST argues that even if a financial advisor is allowed to seek compensation under § 503(b), Chiron must show a) that it made a substantial contribution and (b) that fees and expenses are reasonable. The UST contends that there has been no showing or evidence to prove that the ILC made a substantial contribution to the estate. The ILC nor Chiron have shown that their actions were designed to benefit the entire estate, rather than acting in their own self-interest, or that their actions resulted in an actual and demonstrable benefit to the estate.

Thirdly, the UST argues that the services provided by Chiron are not reasonable. Section 330 requires that the services must be actual, necessary and beneficial to the estate. There is nothing in the motion to suggest that ILC and Chiron have met the standard imposed under §

4

330.

The UST further asserts that Chiron is seeking compensation for services performed in pursuit of two previous unsuccessful motions brought by the ILC: 1) a motion to appoint an official committee of landlords and 2) a motion to transfer venue of this case to Texas. The UST contends that these motions also served the self-interest of the ILC and the Court's denial of them proves that the services rendered by Chiron did not contribute to this estate.

The UST argues in its objection of T&K's fees that T&K spent 60 hours attempting to overturn Delaware Bankruptcy Local Rule 9006-1 which deals with exclusivity extensions. The UST further argues that these services did not benefit the estate. Invoiced time entries in the motion indicate that most of the work performed was completed by partners, when junior level associates could have easily performed the work.

Allied essentially adopts and incorporates by reference the legal and factual grounds set forth in the objections of the Debtors and the Official Committee of Unsecured Creditors. Allied additionally contends that, pursuant to the terms of engagement letters between the ILC and its professional, the ILC is under no obligation to pay the fees and costs sought by its attorneys or financial advisor. Because the ILC did not "incur" the requested fees and expenses within the meaning of 503(b)(3), the ILC's attorneys and financial advisor are not entitled to an award of any fees or expenses under 503(b)(3) or 503(b)(4).

Garden Ridge Holdings, LLC, (GRH) also objects on the basis that the ILC has not paid its professionals, and it is not required to do so under the professionals' engagement. Therefore, according to GRH, the ILC has not "incurred" any obligation to its professionals.

**

5

The issues before this Court are two-fold: whether there exists a genuine issue of material fact in dispute pursuant to Rule 56(c) as to whether the ILC and its professionals, Chiron and T&K, are allowed fees under 11 U.S.C. § 503(b)(4). If so, whether a substantial contribution has been made by these entities to support an award of administrative expenses under § 503(b)(3).

*** 

Rule 56, made applicable to this matter under Rule 7056, provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Rule 56(e) describes the burden of the nonmoving party. That rule provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e), Bankr.R. 7056(e). In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

6

Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether the [trier of fact] could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. 2505.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C.Cir. 1988)).

The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Pavlovich v. National City Bank,* 342 F.Supp.2d 718, 722 -723 (N.D. Ohio 2004) *citing Fulson v. City of Columbus,* 801 F.Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

\*\*\*\*

Section 503 of the Bankruptcy Code provides, in part:

(b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title [11 USC § 502(f)], including–

    (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by–

> (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title [11 USCS § 1102], in making a substantial contribution in a case under chapter 9 or 11 of this title [11 U.S.C. §§ 901 et seq. or 1101 et seq.];
>
> (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;....

11 U.S.C. § § 503(b)(3)(D), (4).  Section 503(b) provides for the recovery of administrative expenses, including "the actual, necessary expense, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by . . . a committee representing creditors [an unofficial committee], ...*other than a committee appointed under section 1102 of this title*, in making a substantial contribution in a case under chapter 9 or 11 of this title." 11 U.S.C. § 503(b)(3)(D) (emphasis added).

A plain reading of this language shows that § 503(b)(3)(D) is the statutory mechanism through which the ILC may recover its expenses incurred in making a substantial contribution to the case other than "compensation and reimbursement specified in [§ 503(b)(4)]." *See In re Jennings, Inc.*, 96 B.R. 500 ("unofficial" ("unappointed") committees who make substantial contribution to the case can be reimbursed).  Section 503(b)(4) allows for the recovery of "reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection . . . and reimbursement for actual, necessary expenses incurred by such attorney or accountant." 11 U.S.C. § 503(b)(4).

8

*Lebron v. Mechem Financial, Inc.*, 27 F.3d 937 (3d Cir. 1994) is the seminal case on this

issue discussing § 503(b)(3)(D) and § 503(b)(4) in this Circuit. In *Lebron*, the Third Circuit held

that under 11 U.S.C. § 503 (b)(3)(D), a creditor was entitled to reimbursement of actual,

necessary expenses that were incurred in making a substantial contribution in a case under

Chapter 11 if his services resulted in an actual and demonstrable benefit to the debtor's estate and

the creditors. The Third Circuit opined:

> Under § 503(b)(3)(D), four categories of persons may apply for reimbursement of
> expenses: (1) creditors, (2) indenture trustees, (3) equity security holders, and (4)
> creditor and equity holder committees other than official committees appointed
> under § 1102 of the Bankruptcy Code. The court may award an applicant actual,
> necessary expenses which were incurred "in making a substantial contribution in a
> case under chapter 9 or 11." Under subsection (b)(4), this may include
> reimbursement for professional fees of an attorney or accountant, where those fees
> meet the additional requirements of that subsection. Any expenses reimbursed are
> administrative expenses with the attendant priority. 11 U.S.C. § 507 (1988).

---

> The "substantial contribution" standard of § 503(b)(3)(D) is derived from §§ 242
> and 243 of the former Bankruptcy Act, 11 U.S.C. §§ 642, 643 (repealed 1978).
> Sen. Rep. No. 95-989, 95th Cong., 2nd Sess. 5, reprinted in 1978 U.S.C.C.A.N.
> 5787, 5852. Those sections were, in turn, derived from former Section 77B(c)(9)
> of the Bankruptcy Act, 11 U.S.C. § 207(c)(9) (repealed 1938). *See*, 6A James
> William Moore & Robert Stephen Oglebay, Collier on Bankruptcy P 13.01, at
> 521-23 (James William Moore ed., 14th ed. 1977); Alfred B. Teton,
> Reorganization Revised, 48 Yale L.J. 573, 603-607 (1939). Sections 242 and 243
> and § 503(b)(3)(D) liberalized the circumstances under which reimbursement was
> authorized, but at each stage in the progression, the core concept has been the
> same. See, Collier, supra, P 13.01, at 523 (14th ed.); 3 Hon. Roy Babitt, et al.,
> Collier on Bankruptcy P 503.04, at 14 & 44-50 (Lawrence P. King ed. 15th ed.
> 1994); Teton, supra, at 604. The services engaged by creditors, creditor
> committees and other parties interested in a reorganization are presumed to be
> incurred for the benefit of the engaging party and are reimbursable if, but only if,
> the services "directly and materially contributed" to the reorganization. *Steere v.
> Baldwin Locomotive Works*, 98 F.2d 889, 891 (3d Cir. 1938) (applying Section
> 77B(c)); In re Solar Mfg. Corp., 206 F.2d 780 (3d Cir. 1953) (same); *In re Mt.
> Forest Fur Farms of Am., Inc.*, 157 F.2d 640 (6th Cir. 1946) (applying § 243); In
> re Lister, 846 F.2d 55 (10th Cir. 1988) (applying § 503(b)(3)(D)).

9

> Thus, "in determining whether there has been a 'substantial contribution' pursuant to section 503(b)(3)(D), the applicable test is whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988). *See also, Matter of Consol. Bancshares, Inc.*, 785 F.2d 1249, 1253 (5th Cir. 1986); Collier, supra, P 503.04, at 38 (15th ed.). "Services which substantially contribute to a case are those which foster and enhance . . . the progress of reorganization." *Consol. Bancshares, Inc.*, 785 F.2d at 1253 (quoting *In re Richton Int'l Corp.*, 15 Bankr. 854, 855 (Bankr. S.D.N.Y. 1981) (other citation omitted)).

*Lebron v. Mechem Fin.*, 27 F.3d at 943-944. The Third Circuit further opined in *Lebron* that:

> Inherent in the term "substantial" is the concept that the benefit received by the estate must be more than an incidental one arising from activities the applicant has pursued in protecting his or her own interests. Creditors are presumed to be acting in their own interests until they satisfy the court that their efforts have transcended self-protection. *Consol. Bancshares, Inc.*, 785 F.2d at 1253 ("a creditor's attorney must ordinarily look to its own client for payment, unless the creditor's attorney rendered services on behalf of the reorganization, not merely on behalf of his client's interest, and conferred a significant and demonstrable benefit to the debtor's estate and the creditors.") (quoting from *In re Gen. Oil Distribs.*, 51 Bankr. 794, 806 (Bankr. E.D.N.Y. 1985)); *In re Bldgs. Dev. Co.*, 98 F.2d 844 (7th Cir. 1938); *In re Jensen-Farley Pictures Inc.*, 47 Bankr. 557, 569 (Bankr. D. Utah 1985). Most activities of an interested party that contribute to the estate will also, of course, benefit that party to some degree, and the existence of a self-interest cannot in and of itself preclude reimbursement. Nevertheless, the purpose of § 503(b)(3)(D) is to encourage activities that will benefit the estate as a whole, and in line with the twin objectives of § 503(b)(3)(D), "substantial contribution" should be applied in a manner that excludes reimbursement in connection with activities of creditors and other interested parties which are designed primarily to serve their own interests and which, accordingly, would have been undertaken absent an expectation of reimbursement from the estate. *Id.* at 944.

A determination that a benefit was conferred does not end the inquiry as to whether there was a "substantial contribution" within the meaning of § 503(b)(3)(D). A creditor should be presumed to be acting in his or her own interest unless the court is able to find that his or her actions were designed to benefit others who would foreseeably be interested in the estate. In the

10

absence of such a finding, there can be no award of expenses even though there may have been an incidental benefit to the Debtor's estate. In the lower court case's decision in *Lebron*, the bankruptcy court made no such finding. *Lebron v. Mechem Fin.*, 27 F.3d 937, 946 (3d Cir. 1994).

Herein, the Debtors move for summary judgment contending in part that the ILC is not entitled to an administrative expense because financial advisors are not included under the plain language of §503(b)(4). This contention, however, is without merit. By its terms section 503(b)(4) applies only to attorneys and accountants. Nevertheless, there is case law allowing §503(b)(4) claims by non-attorneys and non-accountants. *See e.g. Goldin v. Putnam Lovell, Inc. (In re Monarch Capital Corp.)*, 163 B.R. 899 (Bankr. D. Mass. 1994) (awarding a broker an administrative expense claim); *In re Bartley Lindsay Co.*, 120 B.R. 507 (Bankr. D. Minn. 1990) (awarding management consultant administrative expense claim); *In re Farmland Industries, Inc.*, 286 B.R. 895 (Bankr. W.D. Mo. 2002) (awarding Ernst & Young fees for their role as a financial adviser to certain bondholders).

Moreover, the District Court for the District of Delaware awarded an administrative expense claim to a financial advisor. *See In re AM Int'l Inc.*, 203 B.R. 898 (D. Del. 1996). In *AM International*, a financial advisory firm appealed the decision of a Delaware bankruptcy court rejecting the firm's substantial contribution claim. The bankruptcy court previously denied the firm's claim on the sole ground that the firm did not fit "the definition of an accountant or attorney, as required by [§ 503(b)(4)]." *Id.* at 902. Noting the basis for the bankruptcy court's decision, the district court reversed the denial of the firm's substantial contribution claim.

One bankruptcy court, however, has disallowed a financial advisors' request for an

11

administrative expense. *See In re Columbia Gas System, Inc.*, 224 B.R. 540, 555 (Bankr. D. Del. 1998). Since the Delaware District Court in *A.M. International, supra,* has addressed a similar issue, this Court must defer to that construction which granted standing to a financial advisor to pursue such an expense. *See, e.g., In re Jason Realty, L.P.*, 59 F.3d 423, 429 n. 2 (3d Cir. 1995) (in the Third Circuit, district court rulings are entitled to substantial deference by bankruptcy courts).

Such a plain reading is consistent with the Third Circuit's general view of § 503(b)(4): "A creditor's attorney must ordinarily look to its own client for payment, unless the creditor's attorney rendered services on behalf of the reorganization, not merely on behalf of his client's interest, and conferred a significant and demonstrable benefit to the debtors estate and the creditors." *See Lebron*, 27 F.3d at 944 (quoting *In re Consol. Bancshares, Inc.*, 785 F.2d 1249, 1253 (5th Cir. 1986).

Section 503(b)(4) does not require the ILC to have "incurred" T&K's and Chiron's professional fees and expenses to recover such fees and expenses as an administrative claim. *In re Western Asbestos Co.*, 318 B.R. 527, 531 (Bankr. N.D. Cal. 2004) ("a law firm that represents a creditor who has made a substantial contribution in a chapter 11 case may obtain an administrative claim for its reasonable fees and expenses under 11 U.S.C. § 503(b)(4) even though the creditor was not obligated to pay and has not paid those fees and expenses"), *but see, In re Nine Assoc., Inc.*, 76 B.R. 943, 945 (Bankr. S.D.N.Y. 1987) (noting that whether a lawyer's fee arrangement is fixed or contingent is a factor for determining the reasonableness of a fee under § 503(b)(4)).

12

Professional fees and expenses under § 503(b)(4) are not permitted unless the applying entity substantially contributes to the case. *See In re Buckhead Am. Corp.*, 161 B.R. 11, 17 (Bankr. D. Del. 1993); *General Elec. Capital Corp. v. Nigro (In re The Appliance Store, Inc.)*, 181 B.R. 237, 242 (Bankr. W.D. Pa. 1995). "Substantial contribution" is admittedly a "heavy burden." *In re D.W.G.K. Restaurants, Inc.*, 84 B.R. 684, 689 (Bankr. S.D. Cal. 1988). Even assuming the heavy burden of "substantial contribution" is met, a professional's fees and expenses must be reasonable "based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title." 11 U.S.C. § 503(b)(4). Importantly, the reasonableness standard for § 503(b)(4) is the same as the standard for § 330(a)(1) applicable to professional services rendered to the trustee and for which compensation is sought. *Sedona Institute*, 220 B.R. at 79. "This is in keeping with the manner in which Congress controls administrative expenses." *Id.*

The applicant bears the burden of proving, by a preponderance of the evidence, that it has rendered a substantial contribution. *Haskins v. United States (In re Lister)*, 846 F.2d 55, 57 (10th Cir. 1988); *In re Best Products Co.*, 173 B.R. 862, 865 (Bankr. S.D.N.Y. 1994); *In re Alert Holdings, Inc.*, 157 B.R., 753, 757 (Bankr. S.D.N.Y. 1993). The applicant must demonstrate a "credible connection" between his efforts and the reorganization process. *In re Calumet Realty Co.*, 34 B.R. 922, 926 (Bankr. E.D. Penn. 1983). The same documentation and substantiation requirements apply to substantial contribution claims as apply to requests for compensation under section 330. *In re World Direct, Inc.*, 259 B.R. 56, 60; (Bankr. D. Del. 2001)(The burden

13

of proving that the fees sought are reasonable and necessary are upon the applicant); *In re*

*Granite Partners*, 213 B.R. 440, 447 (Bankr. S.D.N.Y. 1997).

*****

The ILC and Chiron contend in support of the motion for administrative fees and

expenses, in part, that:

- Chiron was extremely instrumental in securing the termination of the Debtors' period of exclusivity. This task,...was designed to and did benefit all parties....
- Chiron's efforts throughout the case in "moving the case along" were expressly recognized by the previous judge.
- Chiron's efforts in the formulation, development, and circulation of a competing plan of reorganization was designed to and did provide a direct, significant, and demonstrable benefit to the estate....
- Chiron's efforts in assisting in the securing of the alternative and superior exit financing sources was designed to and did provide a direct, significant, and demonstrable benefit to the estate....
- The preparation and filing of certain documents, challenges, motions, objections, and adversary proceedings directly act to bring to light serious matters to the attention of all creditors...
- It was contemplated that the actions undertaken by the ILC would only be pursued to the extent that the entire estate would be benefitted.

The above cited assertions by the applicants are wholly conclusory. No supporting

documentation was provided to support an alleged benefit conferred upon the Debtors' estate.

Based upon the case law, the ILC, Chiron and T&K have standing to pursue their respective fees,

but it must be determined whether a substantial contribution was made by them to the Debtors'

estate and that their actions substantially and directly benefitted the estate. As the Third Circuit

in *Lebron* opined the inquiry concerning the existence of a substantial contribution is one of fact,

14

it is the bankruptcy court that is in the best position to perform the necessary fact finding task. *Id.* at 946 (a determination of whether or not a substantial contribution to a reorganization has been made is a question of fact).

Based on the foregoing, there exists a genuine issue of material fact as to whether the ILC and its professionals, Chiron and T&K, substantially contributed to the Debtors' estate for purposes of § 503(b). Accordingly, the cross motions for summary judgment are hereby denied. A hearing on this matter relative to the substantial contribution claim will be scheduled to allow for the presentation of evidence by the parties. Each party is to bear its respective costs.

**IT IS SO ORDERED.**

Dated this 16TH day of
May, 2006

**JUDGE RANDOLPH BAXTER**
**UNITED STATES BANKRUPTCY COURT**

15

# EXHIBIT C

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------x
                         :

In re                       :       Chapter 11

WORLDCOM, INC., et al.,     :       Case No. 02 B 13533 (AJG)
                         :
                         :       (Jointly Administered)
                         :
                Debtors.   :
                         :
------------------------------------------------x

### ORDER DENYING THE REQUEST BY
### AKIN GUMP STRAUSS HAUER & FELD LLP FOR POST-PETITION
### PRE-APPOINTMENT FEES PURSUANT TO 11 U.S.C. SECTION 503(b)

Upon consideration of (i) the Application of Akin Gump Strauss Hauer & Feld LLP, Counsel

for the Official Committee of Unsecured Creditors (the ℞Committee℞) (I) for Final Allowance and

Award of Compensation for Services Rendered, Including a Requested Premium, and the

Reimbursement of Expenses During the Period July 29, 2002 through April 20, 2004 and (II) for Final

Allowance and Award of Compensation and the Reimbursement of Expenses Pursuant to 11 U.S.C.

Section 503(B) During the Period July 21, 2002 through July 29, 2002 (the ℞Application℞); (ii) the

Reorganized Debtors℞ Report and Recommendations Regarding Fees and Expenses for the Third

Interim Period, the Fourth Interim Period, and the Final Application; (iii) the Objection of the United

States Trustee (I) to the Final Fee Applications Under Section 330 for Compensation and

Reimbursement of Expenses and (II) to the Request by Akin Gump Strauss Hauer & Feld LLP for Pre-

Appointment Fees and for a Bonus; (iv) the Reply of Akin Gump Strauss Hauer & Feld LLP, Counsel

for the Official Committee of Unsecured Creditors, to the Objection of the United States Trustee and

the Reorganized Debtors to Akin Gump℞s Final Fee Application; (v) the Memorandum of the United

States Trustee in Further Support of Objection to the Request by Akin Gump Strauss Hauer & Feld

LLP for Pre-Appointment Fees; and (vi) the Post-Hearing Memorandum of Law of Akin Gump Strauss

Hauer & Feld LLP with Respect to Akin Gump's Request, Pursuant to 11 U.S.C. Section 503(b), for

Reimbursement of Certain Fees Incurred in the Rendition of Services on Behalf of the Informal

Committee During the Post-Petition Period Prior to the Committee Formation Date (APreformation

Period@, as such term is defined in Exhibit A attached hereto); and upon the hearing held on December

14, 2004; and good and sufficient notice having been given in accordance with the case management

order of this Court, dated December 23, 2002, and Federal Rules of Bankruptcy Procedure

2002(a)(6) and (c)(2); and after due consideration and sufficient cause appearing therefore; and the

Court having previously ruled on the Application to the extent that it requested final fees and expenses

pursuant to section 330 and a premium; and for the reasons set forth by the Court in its ruling on the

record on June 14, 2005, as amplified, modified and corrected by the Court (as set forth on Exhibit A

attached hereto); it is hereby

ORDERED that, the Application, to the extent that it requests, pursuant to section 503(b),

post-petition fees incurred during the Preformation Period, is denied.

Dated:  New York, New York
        July 8, 2005

                        s/Arthur J. Gonzalez
                        HONORABLE ARTHUR J. GONZALEZ
                        UNITED STATES BANKRUPTCY JUDGE

2

EXHIBIT A

OPINION OF THE COURT READ INTO THE RECORD ON JUNE 14, 2005 AND
THEREAFTER AMPLIFIED, MODIFIED AND CORRECTED


Before the Court is the substantial contribution application, pursuant to section 503(b), of Akin

Gump in the original amount of $127,429.50.  Akin Gump accrued such fees while it represented an

informal committee of WorldCom bondholders (AInformal Committee@) during the period between the

filing (July 21, 2002) and the formation of the Official Committee of Unsecured Creditors (ACreditors=

Committee@) on July 29, 2002 (APreformation Period@).  A hearing on the application was held on

December 14, 2004 (the AFee Hearing@) as part of the final application filed by Akin Gump with respect

to its role as counsel to the Creditors= Committee.

The United States Trustee objected to Akin Gump=s application.  Among other things, the

United States Trustee objected to the Preformation Period fees on the basis that Akin Gump had failed

to establish that the fees incurred provided a substantial benefit to the estate.  The Creditors= Committee

supported Akin Gump=s application.  The Debtor reached an agreement with Akin Gump regarding

Akin Gump=s fees which included an overall reduction in the fees.  The Debtor did not take a position

specifically related to the substantial contribution portion of the application.  The Debtor, however, did

object to Akin Gump=s request for a premium.

The substantial contribution request referenced above was subsequently reduced by

1

$26,695.00 [1] - in that, at the Fee Hearing, Akin Gump consented to the reduction of fees in the amount set forth above, which amount is attributable to Akin Gump=s preparation for the organizational meeting that was held on July 29, 2002.[2]

During questioning by the Court at the Fee Hearing, it became clear that the substantial contribution amount claimed was not paid by the Informal Committee nor was there any obligation incurred by the Informal Committee to pay such amount. In fact, Akin Gump stated that there was an understanding between the Informal Committee and Akin Gump that there would be no obligation on the Informal Committee=s part regarding the fees of Akin Gump during the Preformation Period. However, if Akin Gump were to be retained by the Creditors= Committee, the Informal Committee expected that Akin Gump would seek compensation for the Preformation Period fees on the basis of substantial contribution (under section 503(b)), in conjunction with its final fee application (under section

---

[1] Certain of the fees requested at the Fee Hearing relate to fees incurred at a hearing that was held on July 22, 2002 (the AJuly 22nd Hearing@). With respect to the fees incurred for the July 22nd Hearing that were attributable to the examiner issue, Akin Gump acknowledged that such amount did not represent a substantial contribution. The Court assumes that Akin Gump still seeks substantial contribution for the time spent in suggesting candidates for the examiner position to the United States Trustee.

[2] An organizational meeting is held at the direction of the United States Trustee=s Office for the purpose, among other things, of forming an official creditors= committee.

2

330(a)) as counsel to the Creditors= Committee. Some of the members of the Informal Committee were selected to serve on the Creditors= Committee.

Once the Court realized that the fees at issue were neither paid, nor incurred, by the Informal Committee, it raised the issue of whether Akin Gump was entitled to compensation under section 503(b), as a matter of law. Specifically, the issue was whether a professional has standing to seek compensation under section 503 on its own behalf where the client of the professional has neither paid, nor is obligated to pay, the fees of the professional. A briefing schedule was established and briefs were filed by Akin Gump and the United States Trustee.

For the reasons set forth below, the Court finds that (1) an application under section 503(b) must be filed by, or on behalf of, an entity [*see* ' 503(a)]; (2) a professional under 503(b)(4) is a representative of an entity (under 503(b)(3)(D)) and is not itself a qualified entity under 503(a); and (3) even if Akin Gump had standing to bring forth an application under section 503(b), Akin Gump has failed to establish that the services rendered were a substantial contribution to the estate.

As referenced above, section 503(a) sets forth who may file a request for an administrative expense and provides as follows:

(a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request, if permitted by the court for cause.

Subsection (b)(1) sets forth the types of ordinary course of business expenses incurred post-petition that would qualify for administrative expense status. Subsection (b)(2) refers to compensation awarded under section 330(a) to retained professionals whether retained by a trustee, chapter 11 debtor-in-possession, a section 1104 committee, etc. Subsection (b)(3)(A) - (F) list various creditors

3

type entities such as creditors, indenture trustee, custodian, etc. that would be entitled to reimbursement. Specifically subsection (b)(3)(D) sets forth that a creditor may seek compensation and reimbursement of expenses if it establishes that the creditor made a ¶substantial contribution¶ to the estate under (b)(3)(D) (case law has limited such amounts to those that are specifically related to the ¶substantial contribution¶). Subsection (b)(4) sets forth the criteria to be used in assessing the amount related to efforts of an attorney or accountant regarding an entity under subsection (b)(3)(D). Subsection (b)(5) sets forth the standard for payment of an indenture trustee that provided a substantial contribution. Subsection (b)(6) addresses witness fees and its reference to title 28 chapter 119 sets forth the amount of ¶witness fees¶ to be paid. It is important to note that this subsection ((b)(6)) does not stand for the proposition that all witnesses fees are to be compensated by the estate, but simply sets the amount that can be sought from the estate for a witness called by an entity under subsections (b)(1), (b)(2) and (b)(3). This interpretation is consistent with that of subsections (4) and (5) which sets forth how to determine the amount that may be requested under section 503 by an entity that qualifies to make a request under that section. In other words, these subsections do not expand the scope of the entities described in subsection (1), (2), and (3) that can request allowance under section 503(a), but provide the standard under which amounts due are to be determined.

Specifically, subsection 503(b)(3)(D) provides that included as administrative expenses are

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by

(D) a creditor. . . in making a substantial contribution in a case under chapter 9 or 11 . . . .

Section 503(b)(4) provides for the

4

reasonable compensation for professional services rendered by an attorney or an
accountant of an entity whose expense is allowable under paragraph (3) of the
subsection, based on the time, the nature, the extent, and the value of such services, and
the cost of comparable services other than in a case under this title, and reimbursement
for actual, necessary expenses incurred by such attorney or accountant . . . .

The Court finds that subsection (b)(3)(D) establishes the circumstances under which a creditor

who makes a substantial contribution may file a request under section 503(a). Section 503(b)(4) sets

forth the standard to apply in reviewing an application of an attorney or accountant that represents an

*entity* that qualifies under section 503(b)(3)(D). As discussed above, subsections (5) and (6) similarly

reference a standard to be applied in reviewing an entity's application.

A review of the majority of case law, the statute itself, the related commentary and policy

considerations do not provide support for the proposition that a representative of an entity can file a

request for payment under section 503(b) on its own behalf.

COLLIERS ON BANKRUPTCY provides that

> In analyzing a request for compensation, it should be kept [in] mind that the
> professional has been retained by the entity rather than by the estate. The professional
> does not need to seek, nor is the professional able to seek, authorization of the
> professional's employment under section 327. The terms of the professional's retention
> are a matter between the professional and its client.
>     The professional is entitled to look only to its client for payment and not to the
> estate, and it is the responsibility of the client to pay its professionals. While an entity is
> able to seek reimbursement of its payment obligation from the estate, the granting or
> denial of an award does not affect the payment relationship between the professional
> and its client, absent an agreement between them to that effect.
>     The right to request compensation, therefore, belongs to the client and not to the
> professional. While the client may request that the professional seek reimbursement on
> the client's behalf, it should be kept in mind that the professional is not seeking an award
> of compensation to him or herself. It is seeking reimbursement on behalf of the client,
> and the award only determines what portion of the client's payment obligation will be
> compensable from the estate.

4 COLLIER ON BANKRUPTCY p 503.11[4] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.

5

2004) (citations omitted).

The only case law cited by Akin Gump in support of its contention that an attorney or accountant can file a section 503(b) request on its own behalf when there is no obligation on behalf of its client is *In re Western Asbestos Co., et al.* 318 B.R. 524 (Bankr. N.D. Cal. 2004). In *Western Asbestos*, one of the law firms representing the asbestos claimants with unliquidated claims filed an application for payment of its co-counsel attorneys' fees and expenses as administrative expenses based upon substantial contribution made to the bankruptcy case by asbestos claimants that co-counsel represented. The co-counsel did not claim any right to payment from the asbestos claimants. The co-counsel filed and prosecuted a successful plan of reorganization and there was no obligation to reimburse such counsel by its client either directly or out of proceeds from any recovery under the plan. In *Western Asbestos*, the court analogized the request to awards made in civil rights action, etc., in which there was no obligation on behalf of the client to compensate the attorney for its efforts. Furthermore, the court held that a ruling that permitted a professional to file a substantial contribution application on its own behalf, as is the case herein, would be consistent with the natural reading of the statute and congressional intent of the section. This Court respectfully disagrees with the court in *Western Asbestos*.

As far as the natural reading of the statute, it is this Court's view that such reading begins with subsection (a) in which the requestor of any relief is stated to be an entity. Subsection (b)(4) refers to "an attorney or an accountant of an entity." From that, it follows that if the applicant is the entity, then the attorney or accountant for an entity is not the "entity" under section (a). Rather, the attorney or accountant is merely the representative of an entity. Although generally the section 503(b)(3)(D) entity

6

would file the application seeking payment of compensation and reimbursement of expenses, courts have permitted the professional that represented the entity to file an application on behalf of an entity, it does not follow, however, that the representative itself has standing to bring the application on its own behalf. Subsection (b)(4) seems to advance similar purposes to that of sections (5) and (6), in that each section provides a standard upon which compensation and reimbursement is to be determined. Therefore, this supports the conclusion that section (4) does not create an independent basis upon which a representative of an entity has standing to bring the application on its own behalf.

Regarding the *Western Asbestos* courts reference to other statutes that it perceived as less susceptible to an interpretation that would allow payment than section 503(b)(4), the Court notes that each of the cited cases involved a far more compelling public interest requiring a mechanism to compensate counsel for clients who would not otherwise have the financial ability to represent their interests. While the section 503(b)(3) substantial contribution standard certainly is intended to encourage creditor participation, it should be viewed in a context of the provision for compensation of creditor participation in the form of an official committee under section 1102. The "substantial contribution" subsection provides a mechanism for creditors to be compensated in many respects for their efforts that are not a duplicate of the efforts of the debtor or a creditors' committee.

Certainly, general creditor participation is encouraged and there are a number of ways creditors may be compensated for their efforts in the reorganization process. However, such general creditor participation, outside the ambit of an official committee, - albeit encouraged - is not to be compensated by the estate unless it rises to the level of substantial contribution. This strikes an important balance between limiting expenses of an estate - already obligated to compensate retained professionals - and

7

recognizing the need to compensate efforts by certain creditors whose participation provided a substantial benefit to the estate. It is not a situation that is directly analogous to civil rights or truth-in-lending actions, in which participation would otherwise be lacking, or such actions would never be brought at all, absent an enabling statute.

Further, the court in *Western Asbestos* stated that, under section 503(b)(3)(D), an attorney=s fees are specifically excluded. While that is accurate, the issue is what is really excluded. One possibility is that attorney=s fees are excluded from the actual and necessary standard and, therefore, one is directed to the standard under section 503(b)(4) to determine the appropriate amount to be compensated. (An examination of section 503(b)(4) reveals that once substantial contribution has been established, essentially the section 330 criteria to determine the reasonableness of the expenses incurred is applied). Another possibility is that attorney=s fees are excluded entirely and a professional representing a client who has made a substantial contribution has standing (as an entity under section 503(a)) to seek compensation on its own behalf. Or, it may be interpreted to include a combination of both possible interpretations. It is the Court=s view that section 503(b)(4) provides the appropriate standard to determine the amount of compensation that should be allowed when substantial contribution has been established and, as stated previously, does not provide for standing on the part of a professional to seek substantial contribution compensation on its own behalf.

Therefore, based upon the aforementioned, the Court finds that a representative of an entity does not have standing, as a section 503(a) entity, to seek allowance of its fees under section 503 and the underlying policy considerations of section 503(b) do not support or compel any expansion of that section to permit a representative of an entity to seek compensation on its own behalf, as such is sought

8

herein. It must be stated that a clients obligation to pay the fees of a professional provides an important

control and oversight regarding the efforts of an attorney. The argument may be advanced that the

substantial contribution standard sufficiently protects the estate from frivolous applications. That

assumes that every application would be litigated which itself would add an unnecessary burden of time

and expense to the fee application process. Although creditor participation should always be

encouraged and facilitated, the goal of creditor participation is sufficiently encouraged without the need

to grant attorneys standing to seek compensation *on their own behalf* under section 503(b). As

stated above, there are other areas of the law where such arrangements advance important public

policies, but it is this Courts view that creditor participation in bankruptcy cases is sufficiently

encouraged.

Furthermore, even if Akin Gump had standing to bring an application under section 503(b),

after reviewing the services provided by Akin Gump during the Preformation Period, the Court

concludes that such services do not support a finding of substantial contribution. Although some of the

services provided may have directly benefitted the creditors during the Preformation Period and may

have indirectly benefitted the creditors by facilitating Akin Gumps preparedness to assume the role of

Creditors Committee counsel, such did not rise to the level of benefit to the estate that warrants a

finding of substantial contribution.

As discussed above, Akin Gump represented an Informal Committee prior to the filing of the

petition in this case and continued that representation during the Preformation Period, as such period

was previously defined. Some of the members of the Informal Committee were selected and served as

members of the Creditors Committee. Akin Gump was selected by the Creditors Committee as its

9

counsel on July 29, 2002. The application at issue reveals that Akin Gump, as counsel to the Informal

Committee, attended and participated in the July 22nd Hearing held during the Preformation Period,

attended various meetings with the Debtor, performed certain legal research and analysis in preparation

of its appearance at the July 22nd Hearing and its meetings with the Informal Committee, and was in

regular communications with the Informal Committee regarding all the issues that arose during the

Preformation Period.  At the July 22nd Hearing, Akin Gump addressed the Court with respect to a

number of issues regarding the first day motions that were heard that day.  Specifically, Akin Gump

expressed concern regarding the issue of payment of pre-petition taxes. Akin Gump focused on the

what it believed would be a request by the Debtor to authorize payment of non-trust fund taxes under

the order that was proposed.  The United States Attorney=s Office took the position that the taxes at

issue were trust fund taxes related to section 254 of the Communications Act.  The Debtor agreed with

the United States Attorney=s Office=s position as to the 254 taxes and stated that the Debtor=s concern

was that it did not want to put any licenses in jeopardy by not paying certain amounts and that it would

only pay amounts as they came due and had no intentions of accelerating any payments.  In addition,

Akin Gump addressed the extent to which the Court was authorizing, as a priority claim, pre-petition

wage payments that might be over the statutory limit.  Also, Akin Gump addressed the DIP-Interim

order.  Lastly Akin Gump requested a delay in entry of an order directing the appointment of an

examiner until an official committee was formed and could be heard.  Other than reassuring that rights

were being preserved until a final hearing was held and that certain clarifications were put on the record,

no further issues were raised.

Akin Gump=s participation at the July 22nd Hearing regarding the first day motions that were

10

considered certainly showed a familiarity and an understanding of the issues presented to the Court that day which assisted the process. It added beneficial creditor participation and another voice seeking to delay final adjudication of matters until there was time to review certain issues. However, the request to delay entry of a final order until a final hearing was held was not something that was controverted, nor were any of the other issues controverted at that hearing. Akin Gump's representation provided creditor participation at the earliest stages of the case, but to take the next step and assert that such participation at the July 22nd Hearing and other Akin Gump case-related activities during the Preformation Period provided a substantial contribution would be to apply a section 330 standard to those efforts. However, that is not the applicable standard. The comments of Akin Gump on behalf of the Informal Committee were important but in many respects were the type of reservation of rights articulated by the United States Trustee, creditors and often the Court on its own. It can not be overstated that the issue is not whether Akin Gump's efforts during the Preformation Period was beneficial but the issue is did it meet the standard of "substantial contribution." There is no question that the preparation and tasks performed by Akin Gump during this period were reasonable and laid the foundation for its representation of the Creditors' Committee. But it is not compensable under section 503(b) unless it meets the standard of substantial contribution.

The record does not indicate whether Akin Gump was to be compensated by the Informal Committee for its pre-petition representation of them. However, the record indicates that the Informal Committee had an understanding with Akin Gump that it had no obligation to satisfy Akin Gump's fees and expenses for the Preformation Period. And further the members of the Informal Committee were aware that Akin Gump, if retained as counsel to the Creditors' Committee, would seek such fees from

11

the estate under 503(b) in its final fee application.

As background, the Court notes that (1) members of the Informal Committee were substantial WorldCom senior note holders and these holders did not agree to be obligated for the fees and expenses incurred by Akin Gump during the Preformation Period,[3] and (2) Akin Gump acknowledges that had it not been retained as counsel to the Creditors Committee it likely would not have been able to satisfy the standard for substantial contribution. Tr. page 264 lns. 9 through 21.

At the Fee Hearing, Akin Gump asserted the following:

> I would suggest to Your Honor that I probably could not sustain the standards, much of the work that was done ultimately benefitted the Official Creditors Committee. Had we not become Committee counsel, I am not sure that we could sustain that burden. I am not at all sure whether we could have applied under 503(b) for the one-week period. We have never done that in any other case where we did not ultimately become Committee counsel.

As for the specific tasks, Akin Gump asserts on page 33, para. 79 of its application the following:

> Akin Gumps representation of the interests of unsecured creditors
>
> during the Pre Committee Period satisfies these factors. The unsecured
>
> creditors interests were represented and protected by Akin Gump in
>
> connection with the negotiations of hearings on the first day motions. The
>
> work performed by Akin Gump directly benefitted the debtors estates
>
> and all unsecured creditors because, among other things, upon the

---

[3]There is no evidence or assertion that the decision of the Informal Committee not to incur the liability for such fees and expenses had anything to do with their ability to pay such amounts.

12

formation of the Committee, Akin Gump was able to immediately advise the Committee concerning the debtors, their history, their pre-petition restructuring activities and the orders entered in these cases at the first day hearing. Such knowledge was the foundation to formulating a strategy to protect the interests of the unsecured creditors throughout these cases.

As discussed previously, certain orders were presented to the Court at the July 22nd Hearing, following the filing of the petitions on the previous day, Sunday July 21, 2002. As indicated by Akin Gump's time records, it reviewed the motions on behalf of the Informal Committee and attended the July 22nd Hearing in which many of the motions were considered. Although it was certainly beneficial for a creditor constituency to review and be heard on the various motions, nevertheless, the motions that were heard that day were either entered only on an interim basis with a final hearing date scheduled some time after the formation of the Creditors' Committee or they were procedural in nature and entered as needed. Also, a number of vendor, customer and wage orders were entered. The final hearings with respect to the more significant motions that ultimately laid the groundwork for the foundation of this case were scheduled and heard long after the formation of the Creditors' Committee. Thus, while the Preformation Period representation may have assisted Akin Gump in its efforts to become counsel to the Creditors' Committee and enhanced creditor participation at the early stages of the case during the Preformation Period, it falls short of evidencing a substantial contribution to the case. The monitoring and participation in a case by a creditor is not, without more, a substantial contribution.

As discussed above, a review of the orders entered prior to the formation of the Creditors' Committee reveals that no final order was entered prior to the formation for which significant input was

13

provided by Akin Gump. That is not to say that Akin Gump≥s familiarity with these orders did not

provide a learning curve that benefitted the Creditors≥ Committee. However, that does not establish a

substantial contribution to the estate under section 503(b). What it did do was provide Akin Gump with

the ability to demonstrate that, in addition to its skills and reputation as an experienced creditors≥

committee counsel in other cases, it was up to speed in this case and ready to act quickly on the issues

that were coming before the Court. The Court has no doubt that these considerations may have

influenced the Creditors≥ Committee≥s choice of counsel. But to equate those efforts with that of

substantial contribution ‑ when no one particular act during this period, as counsel acknowledges, would

likely have supported a claim for substantial contribution had Akin Gump not been retained ‑ would

severely lessen the threshold under the case law for substantial contribution.

The Court notes that other section 503(b) substantial contribution applications were granted by

the Court in this case. However, in each such application, in addition to establishing the underlying basis

for relief requested, each application was made on behalf of the creditor entity, there was a settlement

for substantially less than for the amount sought, and each professional represented that it had been paid

by its client for the services that formed the basis of the substantial contribution request.

As indicated previously, while Akin Gump maintains that it arguably could meet the substantial‑

contribution standard for the $26,695.00 of the $127,429.50 that was attributed to preparation for the

meeting to form the Official Committee of Unsecured Creditors, it would withdraw its request for that

amount. Included in the $26,695.00 amount is an entry as follows dated 07/25/02 ATelephone call with

. . . and others regarding preparation work for WorldCom Creditors≥ Committee marketing pitch. (.5).

That one half hour entry in many respects provides one possible business reason, from each side≥s point

14

of view, for the "understanding," referenced above, concerning compensation during Preformation Period. Akin Gump took the risk of not being compensated if it was not retained as Creditors= Committee counsel but if it performed the work, it would make a better presentation when seeking to be retained as creditors= committee counsel. If it was retained, it would seek the Preformation Period fees under section 503(b) as it had successfully done in the past. The members of the Informal Committee presumably knew their need for counsel would be addressed without incurring any obligation on the Informal Committee=s part for such fees because Akin Gump would provide the Preformation Period representation to enhance its chances to be retained by the Creditors= Committee.

In sum, Akin Gump represented a sophisticated constituency pre-petition and preformation of the creditors= committee. Although the members of the Informal Committee may have seen the need to have counsel represent their interests prior to the formation of the official committee B in which they would seek membership and were in fact selected to serve B they nonetheless did not agree to compensate their counsel for such representation. And their counsel, a law firm with certain restructuring expertise and experence in representing creditors= committees, engaged in such representation knowing that its recourse for compensation would be section 503(b) if it were selected as counsel to the creditors= committee and it satisfied the standards of substantial contribution.

Presumably, Akin Gump=s skills, reputation and preparation served it well because it was retained as counsel to the Creditors= Committee and was ultimately awarded in excess of $14,000,000.00 for its efforts - and likely such representation enhanced its reputation as a creditors= committee counsel in large, complex bankruptcy cases. But its Preformation Period efforts did not confer a substantial contribution on these estates. While such efforts during the Preformation Period

15

enhanced creditor participation and provided Akin Gump with a learning curve regarding the issues that

would be presented to the Creditors= Committee, such efforts did not establish the basis of a substantial

contribution supported by the record of these cases. Akin Gump=s description of its contribution as

A[t]he foundation to formulating a strategy to protect the interests of the unsecured creditors throughout

these cases,@ does not provide a specific contribution that warrants a substantial contribution award

under section 503(b). Akin Gump=s efforts were simply section 330-type services that would have

been compensable if incurred by an estate professional but do not rise to the level of section 503(b)

substantial contribution. Therefore, Akin Gump=s request for compensation during the Preformation

Period under section 503(b) is denied in all respects.

Akin Gump directs the Court=s attention to a number of orders in other cases in which it

received substantial contribution awards for tasks performed on behalf of informal committees or

creditors in a similar preformation period. These appear to be orders entered in cases without objection

or any discussion by the court. Akin Gump specifically directs this Court to the *Dairy Mart* case in

which this Court awarded substantial contribution for the preformation period. In the *Dairy Mart* case,

no objection was raised. In examining the fee application in that case, the Court was not aware that the

informal committee did not have an obligation to reimburse Akin Gump with respect to the

compensation for professional services it sought in its application. Upon re-examination of the

application, the Court realizes that it failed to perform as thorough of a review as it should have to

determine whether Akin Gump had established its substantial contribution as alleged. As it is now

apparent to the Court that in the *Dairy Mart* case there was no obligation on the part of the pre-petition

creditors to satisfy Akin Gump=s post-petition, preformation fees, this Court was simply wrong, as a

16

matter of law, in granting the section 503(b) award in that case. Further, the Court has not reviewed the *Dairy Mart* application, under the analysis set forth herein, to determine if the entries support a substantial contribution. However, it appears that had the Court conducted a thorough review of the substantial contribution portion of Akin Gump's fee application, it is likely that the Court would have found that the preformation efforts of Akin Gump provided preparation work, similar to that presented in the instant case, which would not have met the applicable substantial contribution standard of section 503.

17

# EXHIBIT D

In re: SEDONA INSTITUTE; SEDONA SELF REALIZATION GROUP, Debtors.
LAW OFFICES OF NEIL VINCENT WAKE, Appellant, v. JOINT OFFICIAL
COMMITTEE OF UNSECURED CREDITORS, Appellee.

No. 00-15769

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

*21 Fed. Appx. 723; 2001 U.S. App. LEXIS 24141*

October 16, 2001, Submitted **, San Francisco, California

** The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a)(2).

November 1, 2001, Filed

**NOTICE:** [**1] RULES OF THE NINTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** Appeal from the United States District Court for the District of Arizona. D.C. No. CV-99-00855-PGR, Bankr. Case Nos: B-92-08152-PHX-RTB and B-93-02133-PHX-RTB. Paul G. Rosenblatt, District Judge, Presiding.

 *Law Offices of Wake v. Sedona Inst. (In re Sedona Inst.), 220 B.R. 74, 1998 Bankr. LEXIS 512 (B.A.P. 9th Cir. Ariz. 1998)*

**DISPOSITION:** Affirmed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** The United States District Court for the District of Arizona affirmed the bankruptcy court's decision denying appellant attorney's application to recover administrative expenses under *11 U.S.C.S. 503*(b). The attorney appealed.

**OVERVIEW:** The attorney claimed the bankruptcy court and the district court erred by denying his application to recover from the bankruptcy estate the fees he incurred preparing a motion to appoint a trustee or an examiner with expanded powers. The attorney prepared the examiner/trustee motion. But shortly before the bankruptcy court heard the motion, the attorney's co-counsel withdrew the motion to appoint an examiner with ex-

panded powers. The attorney insisted that he did not advise his co-counsel to withdraw the motion, but the record indicated otherwise. The attorney's claim that he made a substantial contribution to the estate because the bankruptcy court appointed an examiner was a non sequitur since the attorney's motion, by its plain terms, sought the appointment of a trustee or an examiner with powers equivalent to those of a trustee. Although the bankruptcy court "considered" the attorney's motion, it did not grant the relief he requested.

**OUTCOME:** The appellate court affirmed the denial of the fee application.

**LexisNexis(R) Headnotes**

*Bankruptcy Law > Claims > Types > Unsecured Priority Claims > Administrative Expenses > General Overview*
[HN1] The inquiry concerning the existence of a substantial contribution is one of fact, and it is the bankruptcy court that is in the best position to perform the necessary fact-finding task.

*Bankruptcy Law > Practice & Proceedings > Appeals > Standards of Review > Clear Error Review*
*Civil Procedure > Appeals > Standards of Review > Clearly Erroneous Review*
[HN2] An appellate court reviews a bankruptcy court's finding of fact for clear error.

21 Fed. Appx. 723, *; 2001 U.S. App. LEXIS 24141, **

*Bankruptcy Law > Claims > Types > Unsecured Priority Claims > Administrative Expenses > General Overview*

[HN3] A creditor's showing that it made a "substantial contribution" to the bankruptcy proceedings is the sine qua non of recovery under *11 U.S.C.S. § 503*(b). A creditor's application under § 503(b) should be allowed only if the creditor demonstrates by a preponderance of the evidence that the expenses were incurred in an endeavor that provided tangible benefits to the bankruptcy estate and the other unsecured creditors.

*Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Duties & Functions > Reorganizations*
*Estate, Gift & Trust Law > Trusts > Trustees > Duties & Powers > General Overview*

[HN4] *11 U.S.C.S. § 1106* indicates that while a trustee controls and administers the estate, an examiner only investigates and reports facts relevant to the estate.

*Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Duties & Functions > Reorganizations*

[HN5] Under the United States Bankruptcy Code, a trustee is given all the powers of an examiner to analyze and report on the interests of the parties and actions of the debtor, but is also given the power to act on behalf of the estate, including the filing of a reorganization plan.

*Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Duties & Functions > Reorganizations*
*Estate, Gift & Trust Law > Trusts > Trustees > Duties & Powers > Limitations*

[HN6] As a rule, an examiner's duties are more restricted than those of a trustee.

**COUNSEL:** For SEDONA SELF REALIZATION GROUP, Debtor: Thomas E. Littler, Esq., WARNICKE & LITTLER, Phoenix, AZ.

For OFFICIAL UNSECURED CREDITORS' COMMITTEE, Appellee: Robert John Miller, Esq., BRYAN CAVE LLP, Phoenix, AZ.

**JUDGES:** Before: SNEED, TROTT, and TALLMAN, Circuit Judges.

**OPINION:** [*724]

    MEMORANDUM *

    * This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36-3.

    Appellant Law Offices of Neil Vincent Wake ("Wake") argues that both the bankruptcy court and the district court erred by denying his application under *11 U.S.C. § 503*(b) [**2] to recover as an administrative expense of the bankruptcy estate the fees he incurred preparing a motion to appoint a trustee or an examiner with expanded powers. Because the parties are familiar with the facts, we recite only those facts integral to our decision.

    The bankruptcy court denied Wake's application on two independent grounds: (1) Wake's work on the Examiner/Trustee and Trustee Motions did not make a substantial contribution to the bankruptcy proceedings; and (2) Wake's fees had not been "incurred by" the Handel Group, who had no obligation to pay Wake absent allowance of his fees as an administrative expense under § 503(b). The United States District Court for the District of Arizona affirmed both grounds for the bankruptcy court's decision. Because we affirm the bankruptcy court's decision that Wake did not make a substantial contribution to the bankruptcy proceedings, we do not address the merits of the alternative ground for the decision.

    [HN1] "The inquiry concerning the existence of a substantial contribution is one of fact, and it is the bankruptcy court that is in the best position to perform the necessary fact finding task." See *Lebron v. Mechem Fin. Inc., 27 F.3d 937, 946 (3d Cir. 1994)*. [**3] [HN2] We review the bankruptcy court's finding of fact for clear error. *Beaupied v. Chang (In re Chang), 163 F.3d 1138, 1140 (9th Cir.1998)*, cert. denied, *526 U.S. 1149, 143 L. Ed. 2d 1039, 119 S. Ct. 2029 (1999)*.

    [HN3] A creditor's showing that it made a "substantial contribution" to the bankruptcy proceedings is the *sine qua non* of recovery under § 503(b). See 2 Norton Bankruptcy Law & Practice 2d § 42:28 (1997) ("The preeminent question to be asked before awarding professional compensation under § 503(b)(4) is whether the services resulted in an actual, direct and demonstrable benefit to the estate."). A creditor's application under § 503(b) should be allowed only if the creditor demonstrates by a preponderance of the evidence that the expenses were incurred in an endeavor that "provided tangible benefits to the bankruptcy estate and the other unsecured creditors." *In re Catalina Spa & R.V. Resort, Ltd., 97 B.R. 13, 17 (Bankr. S.D. Cal. 1989)*.

Wake's conduct fails to meet this exacting standard. Wake prepared and filed the Examiner/Trustee Motion. Joseph C. McDaniel ("McDaniel"), Wake's co-counsel, explained to his clients: "we [**4] have asked [*725] the bankruptcy court to continue to invest the power to control the assets of SI and SSRG in a party independent from any person previously or currently associated with SI or SSRG." n1

n1 Such active administration of the estate is a power of a trustee, or an examiner with extended powers, but not of an examiner. See *11 U.S.C. § 704* (2000) (setting forth the duties of a trustee); [HN4] *11 U.S.C. § 1106* (2000) (indicating that while a trustee controls and administers the estate, an examiner only investigates and reports facts relevant to the estate); *In re Marvel Entertainment Group, Inc., 140 F.3d 463, 475 (3rd Cir. 1998)* [HN5] ("Under the Bankruptcy Code, a trustee is given all the powers of an examiner to analyze and report on the interests of the parties and actions of the debtor, but is also given the power to act on behalf of the estate, including the filing of a reorganization plan . . . ."); *Boileau & Johnson (In re Boileau), 736 F.2d 503, 506 (9th Cir. 1984)* [HN6] ("As a rule, an examiner's duties are more restricted than those of a trustee.").

[**5]

Shortly before the bankruptcy court heard the motion, McDaniel withdrew the motion to appoint an examiner with expanded powers. Although Wake insists that he did not advise McDaniel to withdraw the motion, the record shows that shortly before McDaniel withdrew the motion Wake counseled him that "the situation might be changed sufficiently to the better if a trustee is appointed (but not if an examiner with extended powers is appointed) that it might make a difference as to whether this case is economically viable from a contingent fee point of view."

Wake's claim that his services made a substantial contribution to the estate because the bankruptcy court appointed an examiner is a *non sequitur*. Wake's motion, by its plain terms, sought appointment of a trustee (or an examiner with powers equivalent to those of a trustee). Although the court "considered" Wake's motion, it did not grant the relief he requested.

The bankruptcy court did not clearly err by determining that Wake's Trustee Motion did not make a substantial contribution to the bankruptcy proceedings. Accordingly, we affirm the bankruptcy court's denial of Wake's fee application.

**AFFIRMED.**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

## APPEAL TRANSMITTAL SHEET

Case Number: __04-10324_____    ⦿ BK    ○ AP
    If AP, related BK Case Number: _____

Title of Order Appealed:
Order Denying the Cross Motions for Summary Judgment._____
        Docket Number: _2170_____       Date Entered: _5/22/06_____

Item Transmitted:  ○ Notice of Appeal          ⦿ Motion for Leave to Appeal
              ○ Amended Notice of Appeal     ○ Cross Appeal
              Docket Number: _2181____    Date Filed: _6/1/06_____

*Appellant/Cross Appellant:        *Appellee/Cross Appellee
Garden Ridge Corp_____      Informal Landlord Committee_____ ◘

Counsel for Appellant:           Counsel for Appellee:
  Pauline K Morgan_____ ◘   McCarter & English LLP_____
  Young Conaway Stargatt & Taylor LLP___ ◘  Thomas D Walsh_____
  1000 West St 17 Fl_____ ◘   919 Market St Ste 1800_____
  Wilmington, DE 19801_____ ◘   Wilmington, DE 19801_____
  302 571 6600_____    302 984 6300_____

*If additional room is needed, please attach a separate sheet.

Filing Fee paid?  ⦿ Yes  ○ No

IFP Motion Filed by Appellant?  ○ Yes  ⦿ No

Have Additional Appeals to the Same Order been Filed?  ○ Yes  ⦿ No
    If so, has District Court assigned a Civil Action Number?  ○ Yes  ○ No  Civil Action #_____

Additional Notes:
_____

__January 29, 2007_____      By: _Ken Brown_____
Date                          Deputy Clerk

FOR USE BY U.S. BANKRUPTCY COURT

Bankruptcy Court Appeal (BAP) Number: _06-41_____
7/6/06