IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GARDEN RIDGE CORPORATION, | ) | Case No. 04-10324 (KJC) |
| *et al.*, | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Re: Docket No. 2170 |

### **NOTICE OF APPEAL**

The above-captioned reorganized debtors (collectively, the "Reorganized

Debtors") hereby appeal under 28 U.S.C. § 158(a) from the order of the United States

Bankruptcy Court for the District of Delaware [Docket No. 2170] (the "Order") and

accompanying opinion [Docket No. 2169] (the "Opinion"), denying the Reorganized Debtors'

Motion for Summary Judgment With Respect to the Motions of the Informal Landlord

Committee for Allowance of Reasonable Fees and Administrative Expenses Incurred for

Professional Services Rendered Pursuant to 11 U.S.C. §503(b) [Docket No. 1908] (the

"Summary Judgment Motion"), entered in these jointly administered cases on May 22, 2006.

The names of all parties to the order appealed from and the names, addresses and telephone numbers of the respective attorneys are as follows:

1.    **Reorganized Debtors**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Pauline K. Morgan
Joseph M. Barry
Sean T. Greecher
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

– and –

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Alan W. Kornberg
Justin G. Brass
1285 Avenue of the Americas
New York, New York  10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990


2.    **Informal Landlord Committee**

THOMPSON & KNIGHT LLP
John S. Brannon
1700 Pacific Avenue
Suite 3300
Dallas, TX 75201
Telephone:  (214) 969-1505
Facsimile:  (214) 999-1608

- and –

McCARTER & ENGLISH, LLP
Thomas D. Walsh
919 Market Street
Suite 1800
Wilmington, DE 19801
Telephone: (302) 984-6300
Facsimile: (302) 984-6399

062883.1001

The names of other interested parties to the order appealed from and the names,

addresses, and telephone numbers of their respective attorneys are as follows:

### 3.     The Office of the United States Trustee

OFFICE OF THE UNITED STATES TRUSTEE
David Klauder
Richard Schepacarter
J. Caleb Boggs Federal Building
844 King Street, Suite 2313
Wilmington, DE 19801
Telephone: (302) 573-6491
Facsimile: (302) 573-6497

### 4.     GRDG Holdings LLC

EDWARDS & ANGELL
Denise Seastone Kraft
919 N. Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 425-7106
Facsimile: (888) 325-9741

- and –

SEWARD & KISSEL LLP
John R. Ashmead
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

### 5.     Official Committee of Unsecured Creditors

PEPPER HAMILTON LLP
David B. Stratton
David M. Fournier
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1700
Telephone: (302) 777-6566

- and –

OTTERBOURG STEINDLER HOUSTON & ROSEN, P.C.
Scott L. Hazan
Jenette Barrow-Bosshart
230 Park Avenue
New York, NY 10169
Telephone: (212) 661-9100

6. **Allied Capital Corporation**

ZUCKERMAN SPAEDER LLP
Thomas G. Macauley
Elizabeth D. Power
919 Market Street, Suite 900
Wilmington, DE 19899
Telephone: (302) 427-0400
Facsimile: (302) 427-8242

- and –

DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
George R. Pitts
Jeffrey Rhodes
2101 L Street, NW
Washington, DC 20037
Telephone: (202) 785-9700
Facsimile: (202) 887-0689

7. **Chiron Financial Group, Inc.**

HAYNES & BOONE, LLP
Patrick L. Hughes
1 Houston Center
1221 McKinney, Suite 2100
Houston, TX 77010
Telephone: (713) 547-2000
Facsimile: (713) 547-2600

- and –

McCARTER & ENGLISH, LLP
Thomas D. Walsh
919 Market Street
Suite 1800
Wilmington, DE 19801
Telephone: (302) 984-6300
Facsimile: (302) 984-6399

Dated: June 1, 2006
      Wilmington, Delaware

YOUNG CONAWAY STARGATT &TAYLOR, LLP

Pauline K. Morgan (No. 3650)
Joseph M. Barry (No. 4221)
Sean T. Greecher (No. 4484)
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

– and –

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Alan W. Kornberg
Curtis J. Weidler
Justin G. Brass
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

Counsel for the Reorganized Debtors

DB01:2110138.1                                                                                    062883.1001

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

**IN RE:**

**GARDEN RIDGE, INC. et al.**

Debtor.

**IN PROCEEDINGS UNDER CHAPTER 11**

**CASE NO. 04-10324**

**JUDGE RANDOLPH BAXTER**

### MEMORANDUM OF OPINION AND ORDER

The matter before the Court is Garden Ridge Corporation, *et al*'s (hereinafter "the Debtors") motion for summary judgment pursuant to Bankruptcy Rule 7056. Summary judgment is sought in response to a motion filed by the Informal Landlord Committee's ("ILC") seeking allowance of reasonable fees and administrative expenses incurred for professional services rendered pursuant to 11 U.S.C. § 503(b). The Court has jurisdiction to determine the motion under 28 U.S.C. § 1334.

The ILC's motion requests payment of professional fees and expenses incurred by Chiron Financial, its financial advisor, in the total amount of $856,046.33, as administrative expenses. The ILC alleges that Chiron provided services that made a substantial contribution to the estate. Chiron seeks compensation under § 503(b)(4) of the Code. The ILC's motion also requests payment of professional fees and expenses incurred by Thompson & Knight LLP ("T&K"), the ILC's primary counsel, in the total amount of $425,739.41, as administrative expenses pursuant to 11 U.S.C. § 503(b).

The Debtors argue that, due to the contingent nature of the fee arrangement for T&K and Chiron, the ILC lacks standing under § 503(b)(4). The Debtors also argue that the ILC cannot recover Chiron's professional fees and expenses under § 503(b)(4) because Chiron is not an

attorney or accountant.

The United States Trustee, the Official Committee of Unsecured Creditors, Garden Ridge Holdings, and Applied Capital filed pleadings in support of the Debtors' motion for summary judgment. After a duly-noticed hearing, the Court makes the following findings and conclusions:

On February 2, 2004, Debtors filed for Chapter 11 relief. The United States Trustee appointed an official committee of unsecured creditors (the Creditors Committee). On April 14, 2005, the Informal Landlord Committee (the ILC) filed motions for the allowance of reasonable fees and administrative expenses incurred for professional services rendered pursuant to 11 U.S.C. § 503(b). The motion requested fees for (1) the services of Thompson & Knight LLP (T&K) as the ILC's primary counsel, (2) Robinson, Grayson & Drayden, P.A. ("RG&D") as the ILC's local counsel[1], and (3) Chiron Financial Group ("Chiron") as the ILC's financial advisor. On March 4, 2005, this Court denied the motion of the Informal Landlord Committee to appoint an official committee of landlords. The ILC alleges that it was formed on April 7, 2005 by a group of landlords that were a party to eight leases with the Debtors. According to the ILC's motion, on the same date the ILC was formed, it retained Chiron as its financial advisor. The Debtors' Plan of Reorganization was confirmed by this Court on April 28, 2005.

The Debtors assert that it is undisputed that the ILC did not incur any obligation to pay either Chiron or T&K because the ILC is not required to contribute or make any payments to such professionals. To support this assertion, the Debtors cite to the engagement letters of the professionals, and further assert that the subject professionals entered into a contingency fee

---

[1] A certification of counsel appears on the docket reflecting a stipulation between the Debtors and RG&D. So, RG&D's requested fees will not be discussed herein.

arrangement whereby the professionals agreed to look only to the Debtors for compensation if

successful in a substantial contribution motion. Indeed, the ILC has never made a payment to

these professionals. The Debtors further contend that, in order to recover fees and expenses

under §503(b)(4), the creditor party seeking reimbursement must have incurred actual expenses

from the attorneys or accountants. The Debtors argue that it is undisputed that Chiron Financial

acted as a financial advisor to the ILC and only attorneys and accountants can be reimbursed

pursuant to the plain language of §503(b) of the Bankruptcy Code.

The ILC filed a cross motion for partial summary judgment requesting the Court find that

it or T&K and Chiron have standing to seek professional fees and administrative expenses. The

ILC asserts that it retained Chiron as its financial advisor in the case on April 7, 2004.

According to the ILC, the services which the ILC authorized Chiron to render, and services

which have been rendered include:

- Review and analyze the financial and operating statement of the Company and each retail outlet;
- Evaluate the assets and liabilities of the Company;
- Review and analyze the business of the Company and financial projections;
- Evaluate the Company's debt capacity in light of its projected cash flows;
- assist in the determination of an appropriate capital structure;
- Determine a theoretical range of values for the Company on a going concern basis;...

The ILC contends that, Chiron's services were: designed to benefit all parties to the

Debtor's estate, resulted in actual and demonstrable benefits to the Debtors' estate and its

creditors, directly and materially contributed to the benefits to the Debtors' reorganization,

"transcended self-protection of the interests of the Landlord Committee", and would not have

been undertaken absent expectation of reimbursement from Debtors' estate, and were not

duplicative of services provided by others in the case.

3

The ILC argues that Chiron agreed to be compensated for its fees and expenses out of any administrative expense claim awarded as a result of this motion in the event that a motion to secure official status for the Landlord Committee was unsuccessful. The ILC disputes the Debtors argument that Chiron's alleged substantial claim does not require the professional be labeled an "attorney" or "accountant". It asserts that Chiron's services as financial advisor fits within the types of services that are rendered by an "accountant". The ILC cites to a district court opinion reversing a bankruptcy court decision which denied a § 503(b)(4) claim on the sole basis that a financial advisor was not an accountant. The ILC also asserts that under § 101(1), a financial advisor is considered an accountant for §503(b)(4) purposes.

The UST supports the motion for summary judgment filed by the Debtors. The UST argues that Chiron is not eligible for compensation under § 503(b)(4) because it is neither an attorney or accountant as the plain meaning of the statute requires. The UST also argues that financial advisors cannot be compensated on a substantial contribution basis under § 503(b). Next, the UST argues that even if a financial advisor is allowed to seek compensation under § 503(b), Chiron must show a) that it made a substantial contribution and (b) that fees and expenses are reasonable. The UST contends that there has been no showing or evidence to prove that the ILC made a substantial contribution to the estate. The ILC nor Chiron have shown that their actions were designed to benefit the entire estate, rather than acting in their own self-interest, or that their actions resulted in an actual and demonstrable benefit to the estate.

Thirdly, the UST argues that the services provided by Chiron are not reasonable. Section 330 requires that the services must be actual, necessary and beneficial to the estate. There is nothing in the motion to suggest that ILC and Chiron have met the standard imposed under §

4

330.

The UST further asserts that Chiron is seeking compensation for services performed in pursuit of two previous unsuccessful motions brought by the ILC: 1) a motion to appoint an official committee of landlords and 2) a motion to transfer venue of this case to Texas. The UST contends that these motions also served the self-interest of the ILC and the Court's denial of them proves that the services rendered by Chiron did not contribute to this estate.

The UST argues in its objection of T&K's fees that T&K spent 60 hours attempting to overturn Delaware Bankruptcy Local Rule 9006-1 which deals with exclusivity extensions. The UST further argues that these services did not benefit the estate. Invoiced time entries in the motion indicate that most of the work performed was completed by partners, when junior level associates could have easily performed the work.

Allied essentially adopts and incorporates by reference the legal and factual grounds set forth in the objections of the Debtors and the Official Committee of Unsecured Creditors. Allied additionally contends that, pursuant to the terms of engagement letters between the ILC and its professional, the ILC is under no obligation to pay the fees and costs sought by its attorneys or financial advisor. Because the ILC did not "incur" the requested fees and expenses within the meaning of 503(b)(3), the ILC's attorneys and financial advisor are not entitled to an award of any fees or expenses under 503(b)(3) or 503(b)(4).

Garden Ridge Holdings, LLC, (GRH) also objects on the basis that the ILC has not paid its professionals, and it is not required to do so under the professionals' engagement. Therefore, according to GRH, the ILC has not "incurred" any obligation to its professionals.

**

The issues before this Court are two-fold: whether there exists a genuine issue of material fact in dispute pursuant to Rule 56(c) as to whether the ILC and its professionals, Chiron and T&K, are allowed fees under 11 U.S.C. § 503(b)(4). If so, whether a substantial contribution has been made by these entities to support an award of administrative expenses under § 503(b)(3).

***

Rule 56, made applicable to this matter under Rule 7056, provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Rule 56(e) describes the burden of the nonmoving party. That rule provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e), Bankr.R. 7056(e). In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether the [trier of fact] could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. 2505.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C.Cir. 1988)).

The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Pavlovich v. National City Bank,* 342 F.Supp.2d 718, 722 -723 (N.D. Ohio 2004) *citing Fulson v. City of Columbus,* 801 F.Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

\*\*\*\*

Section 503 of the Bankruptcy Code provides, in part:

(b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title [11 USC § 502(f)], including–

   (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by–

7

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title [11 USCS § 1102], in making a substantial contribution in a case under chapter 9 or 11 of this title [11 U.S.C. §§ 901 et seq. or 1101 et seq.];

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;....

11 U.S.C. § § 503(b)(3)(D), (4). Section 503(b) provides for the recovery of administrative expenses, including "the actual, necessary expense, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by . . . a committee representing creditors [an unofficial committee], ...*other than a committee appointed under section 1102 of this title*, in making a substantial contribution in a case under chapter 9 or 11 of this title." 11 U.S.C. § 503(b)(3)(D) (emphasis added).

A plain reading of this language shows that § 503(b)(3)(D) is the statutory mechanism through which the ILC may recover its expenses incurred in making a substantial contribution to the case other than "compensation and reimbursement specified in [§ 503(b)(4)]." *See In re Jennings, Inc.*, 96 B.R. 500 ("unofficial" ("unappointed") committees who make substantial contribution to the case can be reimbursed). Section 503(b)(4) allows for the recovery of "reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection . . . and reimbursement for actual, necessary expenses incurred by such attorney or accountant." 11 U.S.C. § 503(b)(4).

8

*Lebron v. Mechem Financial, Inc.*, 27 F.3d 937 (3d Cir. 1994) is the seminal case on this

issue discussing § 503(b)(3)(D) and § 503(b)(4) in this Circuit. In *Lebron*, the Third Circuit held

that under 11 U.S.C. § 503 (b)(3)(D), a creditor was entitled to reimbursement of actual,

necessary expenses that were incurred in making a substantial contribution in a case under

Chapter 11 if his services resulted in an actual and demonstrable benefit to the debtor's estate and

the creditors.   The Third Circuit opined:

> Under § 503(b)(3)(D), four categories of persons may apply for reimbursement of
> expenses: (1) creditors, (2) indenture trustees, (3) equity security holders, and (4)
> creditor and equity holder committees other than official committees appointed
> under § 1102 of the Bankruptcy Code. The court may award an applicant actual,
> necessary expenses which were incurred "in making a substantial contribution in a
> case under chapter 9 or 11." Under subsection (b)(4), this may include
> reimbursement for professional fees of an attorney or accountant, where those fees
> meet the additional requirements of that subsection. Any expenses reimbursed are
> administrative expenses with the attendant priority. 11 U.S.C. § 507 (1988).
>
> ---
>
> The "substantial contribution" standard of § 503(b)(3)(D) is derived from §§ 242
> and 243 of the former Bankruptcy Act, 11 U.S.C. §§ 642, 643  (repealed 1978).
> Sen. Rep. No. 95-989, 95th Cong., 2nd Sess. 5, reprinted in 1978 U.S.C.C.A.N.
> 5787, 5852. Those sections were, in turn, derived from former Section 77B(c)(9)
> of the Bankruptcy Act, 11 U.S.C. § 207(c)(9) (repealed 1938). *See*, 6A James
> William Moore & Robert Stephen Oglebay, Collier on Bankruptcy P 13.01, at
> 521-23 (James William Moore ed., 14th ed. 1977); Alfred B. Teton,
> Reorganization Revised, 48 Yale L.J. 573, 603-607 (1939). Sections 242 and 243
> and § 503(b)(3)(D) liberalized the circumstances under which reimbursement was
> authorized, but at each stage in the progression, the core concept has been the
> same. See, Collier, supra, P 13.01, at 523 (14th ed.); 3 Hon. Roy Babitt, et al.,
> Collier on Bankruptcy P 503.04, at 14 & 44-50 (Lawrence P. King ed. 15th ed.
> 1994); Teton, supra, at 604. The services engaged by creditors, creditor
> committees and other parties interested in a reorganization are presumed to be
> incurred for the benefit of the engaging party and are reimbursable if, but only if,
> the services "directly and materially contributed" to the reorganization. *Steere v.
> Baldwin Locomotive Works*, 98 F.2d 889, 891 (3d Cir. 1938) (applying Section
> 77B(c)); In re Solar Mfg. Corp., 206 F.2d 780 (3d Cir. 1953) (same); *In re Mt.
> Forest Fur Farms of Am., Inc.*, 157 F.2d 640 (6th Cir. 1946) (applying § 243); In
> re Lister, 846 F.2d 55 (10th Cir. 1988) (applying § 503(b)(3)(D)).

Thus, "in determining whether there has been a 'substantial contribution' pursuant to section 503(b)(3)(D), the applicable test is whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988). *See also, Matter of Consol. Bancshares, Inc.*, 785 F.2d 1249, 1253 (5th Cir. 1986); Collier, supra, P 503.04, at 38 (15th ed.). "Services which substantially contribute to a case are those which foster and enhance . . . the progress of reorganization." *Consol. Bancshares, Inc.*, 785 F.2d at 1253 (quoting *In re Richton Int'l Corp.*, 15 Bankr. 854, 855 (Bankr. S.D.N.Y. 1981) (other citation omitted)).

*Lebron v. Mechem Fin.*, 27 F.3d at 943-944. The Third Circuit further opined in *Lebron* that:

Inherent in the term "substantial" is the concept that the benefit received by the estate must be more than an incidental one arising from activities the applicant has pursued in protecting his or her own interests. Creditors are presumed to be acting in their own interests until they satisfy the court that their efforts have transcended self-protection. *Consol. Bancshares, Inc.*, 785 F.2d at 1253 ("a creditor's attorney must ordinarily look to its own client for payment, unless the creditor's attorney rendered services on behalf of the reorganization, not merely on behalf of his client's interest, and conferred a significant and demonstrable benefit to the debtor's estate and the creditors.") (quoting from *In re Gen. Oil Distribs.*, 51 Bankr. 794, 806 (Bankr. E.D.N.Y. 1985)); *In re Bldgs. Dev. Co.*, 98 F.2d 844 (7th Cir. 1938); *In re Jensen-Farley Pictures Inc.*, 47 Bankr. 557, 569 (Bankr. D. Utah 1985). Most activities of an interested party that contribute to the estate will also, of course, benefit that party to some degree, and the existence of a self-interest cannot in and of itself preclude reimbursement. Nevertheless, the purpose of § 503(b)(3)(D) is to encourage activities that will benefit the estate as a whole, and in line with the twin objectives of § 503(b)(3)(D), "substantial contribution" should be applied in a manner that excludes reimbursement in connection with activities of creditors and other interested parties which are designed primarily to serve their own interests and which, accordingly, would have been undertaken absent an expectation of reimbursement from the estate. *Id.* at 944.

A determination that a benefit was conferred does not end the inquiry as to whether there was a "substantial contribution" within the meaning of § 503(b)(3)(D). A creditor should be presumed to be acting in his or her own interest unless the court is able to find that his or her actions were designed to benefit others who would foreseeably be interested in the estate. In the

10

absence of such a finding, there can be no award of expenses even though there may have been

an incidental benefit to the Debtor's estate.  In the lower court case's decision in *Lebron*, the

bankruptcy court made no such finding.  *Lebron v. Mechem Fin.*, 27 F.3d 937, 946 (3d Cir.

1994).

Herein, the Debtors move for summary judgment contending in part that the ILC is not

entitled to an administrative expense because financial advisors are not included under the plain

language of §503(b)(4).  This contention, however, is without merit.  By its terms section

503(b)(4) applies only to attorneys and accountants.  Nevertheless, there is case law allowing

§503(b)(4) claims by non-attorneys and non-accountants.  *See e.g. Goldin v. Putnam Lovell, Inc.*

*(In re Monarch Capital Corp.)*, 163 B.R. 899 (Bankr. D. Mass. 1994) (awarding a broker an

administrative expense claim); *In re Bartley Lindsay Co.*, 120 B.R. 507 (Bankr. D. Minn. 1990)

(awarding management consultant administrative expense claim); *In re Farmland Industries,*

*Inc.*, 286 B.R. 895 (Bankr. W.D. Mo. 2002) (awarding Ernst & Young fees for their role as a

financial adviser to certain bondholders).

Moreover, the District Court for the District of Delaware awarded an administrative

expense claim to a financial advisor.  *See In re AM Int'l Inc.*, 203 B.R. 898 (D. Del. 1996).  In

*AM International*, a financial advisory firm appealed the decision of a Delaware bankruptcy court

rejecting the firm's substantial contribution claim.  The bankruptcy court previously denied the

firm's claim on the sole ground that the firm did not fit "the definition of an accountant or

attorney, as required by [§ 503(b)(4)]." *Id.* at 902.  Noting the basis for the bankruptcy court's

decision, the district court reversed the denial of the firm's substantial contribution claim.

One bankruptcy court, however, has disallowed a financial advisors' request for an

11

administrative expense. *See In re Columbia Gas System, Inc.*, 224 B.R. 540, 555 (Bankr. D. Del. 1998). Since the Delaware District Court in *A.M. International, supra,* has addressed a similar issue, this Court must defer to that construction which granted standing to a financial advisor to pursue such an expense. *See, e.g., In re Jason Realty, L.P.,* 59 F.3d 423, 429 n. 2 (3d Cir. 1995) (in the Third Circuit, district court rulings are entitled to substantial deference by bankruptcy courts).

Such a plain reading is consistent with the Third Circuit's general view of § 503(b)(4): "A creditor's attorney must ordinarily look to its own client for payment, unless the creditor's attorney rendered services on behalf of the reorganization, not merely on behalf of his client's interest, and conferred a significant and demonstrable benefit to the debtors estate and the creditors." *See Lebron,* 27 F.3d at 944 (quoting *In re Consol. Bancshares, Inc.,* 785 F.2d 1249, 1253 (5th Cir. 1986).

Section 503(b)(4) does not require the ILC to have "incurred" T&K's and Chiron's professional fees and expenses to recover such fees and expenses as an administrative claim. *In re Western Asbestos Co.,* 318 B.R. 527, 531 (Bankr. N.D. Cal. 2004) ("a law firm that represents a creditor who has made a substantial contribution in a chapter 11 case may obtain an administrative claim for its reasonable fees and expenses under 11 U.S.C. § 503(b)(4) even though the creditor was not obligated to pay and has not paid those fees and expenses"), *but see, In re Nine Assoc., Inc.,* 76 B.R. 943, 945 (Bankr. S.D.N.Y. 1987) (noting that whether a lawyer's fee arrangement is fixed or contingent is a factor for determining the reasonableness of a fee under § 503(b)(4)).

Professional fees and expenses under § 503(b)(4) are not permitted unless the applying entity substantially contributes to the case. *See In re Buckhead Am. Corp.*, 161 B.R. 11, 17 (Bankr. D. Del. 1993); *General Elec. Capital Corp. v. Nigro (In re The Appliance Store, Inc.)*, 181 B.R. 237, 242 (Bankr. W.D. Pa. 1995). "Substantial contribution" is admittedly a "heavy burden." *In re D.W.G.K. Restaurants, Inc.*, 84 B.R. 684, 689 (Bankr. S.D. Cal. 1988). Even assuming the heavy burden of "substantial contribution" is met, a professional's fees and expenses must be reasonable "based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title." 11 U.S.C. § 503(b)(4). Importantly, the reasonableness standard for § 503(b)(4) is the same as the standard for § 330(a)(1) applicable to professional services rendered to the trustee and for which compensation is sought. *Sedona Institute*, 220 B.R. at 79. "This is in keeping with the manner in which Congress controls administrative expenses." *Id.*

The applicant bears the burden of proving, by a preponderance of the evidence, that it has rendered a substantial contribution. *Haskins v. United States (In re Lister)*, 846 F.2d 55, 57 (10th Cir. 1988); *In re Best Products Co.*, 173 B.R. 862, 865 (Bankr. S.D.N.Y. 1994); *In re Alert Holdings, Inc.*, 157 B.R., 753, 757 (Bankr. S.D.N.Y. 1993). The applicant must demonstrate a "credible connection" between his efforts and the reorganization process. *In re Calumet Realty Co.*, 34 B.R. 922, 926 (Bankr. E.D. Penn. 1983). The same documentation and substantiation requirements apply to substantial contribution claims as apply to requests for compensation under section 330. *In re World Direct, Inc.*, 259 B.R. 56, 60; (Bankr. D. Del. 2001)(The burden

13

of proving that the fees sought are reasonable and necessary are upon the applicant); *In re*

*Granite Partners*, 213 B.R. 440, 447 (Bankr. S.D.N.Y. 1997).

*****

The ILC and Chiron contend in support of the motion for administrative fees and

expenses, in part, that:

- Chiron was extremely instrumental in securing the termination of the Debtors' period of exclusivity. This task,...was designed to and did benefit all parties....
- Chiron's efforts throughout the case in "moving the case along" were expressly recognized by the previous judge.
- Chiron's efforts in the formulation, development, and circulation of a competing plan of reorganization was designed to and did provide a direct, significant, and demonstrable benefit to the estate....
- Chiron's efforts in assisting in the securing of the alternative and superior exit financing sources was designed to and did provide a direct, significant, and demonstrable benefit to the estate....
- The preparation and filing of certain documents, challenges, motions, objections, and adversary proceedings directly act to bring to light serious matters to the attention of all creditors...
- It was contemplated that the actions undertaken by the ILC would only be pursued to the extent that the entire estate would be benefitted.

The above cited assertions by the applicants are wholly conclusory. No supporting

documentation was provided to support an alleged benefit conferred upon the Debtors' estate.

Based upon the case law, the ILC, Chiron and T&K have standing to pursue their respective fees,

but it must be determined whether a substantial contribution was made by them to the Debtors'

estate and that their actions substantially and directly benefitted the estate. As the Third Circuit

in *Lebron* opined the inquiry concerning the existence of a substantial contribution is one of fact,

14

it is the bankruptcy court that is in the best position to perform the necessary fact finding task. *Id. at* 946 (a determination of whether or not a substantial contribution to a reorganization has been made is a question of fact).

Based on the foregoing, there exists a genuine issue of material fact as to whether the ILC and its professionals, Chiron and T&K, substantially contributed to the Debtors' estate for purposes of § 503(b). Accordingly, the cross motions for summary judgment are hereby denied. A hearing on this matter relative to the substantial contribution claim will be scheduled to allow for the presentation of evidence by the parties. Each party is to bear its respective costs.

**IT IS SO ORDERED.**

Dated this /6 ᵀᴴ day of
May, 2006

**JUDGE RANDOLPH BAXTER**
**UNITED STATES BANKRUPTCY COURT**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                                   IN PROCEEDINGS UNDER CHAPTER 11

GARDEN RIDGE, INC. et al.                CASE NO. 04-10324

                                         JUDGE RANDOLPH BAXTER
                Debtor.

## JUDGMENT

At Cleveland, in said District, on this 6th day of May, 2006.

A Memorandum Of Opinion And Order having been rendered by the Court in this matter,

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that there exists a genuine

issue of material fact as to whether the ILC and its professionals, Chiron and T&K, substantially

contributed to the Debtors' estate for purposes of § 503(b). Accordingly, the cross motions for

summary judgment are hereby denied. A hearing on this matter relative to the substantial

contribution claim will be scheduled to allow for the presentation of evidence by the parties. Each

party is to bear its respective costs.

IT IS SO ORDERED.

                                    JUDGE  RANDOLPH BAXTER
                                    UNITED STATES BANKRUPTCY COURT